E. MOORHEAD V. G. F. ARNOLD.
No. 14,496.   (84 Pac. 742.)
SYLLABUS BY THE COURT.

1. ELECTIONS — *Preservation of Ballots — Finding by Contest
    Court—Review.*   Findings made by a court organized for the
    trial of a contested county election, relating to the physical
    appearance, condition and contents of a sack produced before
    it as the one in which the ballots from an election precinct
    had been sealed up and conveyed to the county clerk, will
    not be set aside for the lack of evidence when the bag with
    its contents was brought into the immediate presence of the
    court for inspection and both the bag and its contents were
    inspected by each of the three judges.

2. ———— *Ground of Objection to Recount of Ballots Need Not
    be Pleaded.*   An objection by the contestee to the counting
    of papers offered by the contestor as the ballots from an
    election precinct, on the ground that they have not been pre-
    served as required by law and are not brought into court in
    the same condition as that in which they were left by the

election board, is an objection to evidence only, is not the statement of a defense to the causes of contest set forth in the contestor's statement, and the grounds of the objection need not be pleaded in the contestee's answer.

3. ——— *Custody and Identity of Ballots—Waiver of Investigation—Court Not Precluded Thereby.* The mere fact that, upon the production in court by the county clerk of what purports to be a bag of ballots from an election precinct, the contestee waives investigation concerning the custody and identity of the supposed ballots and the court proceeds to count them does not preclude the court, in its discretion and in the public interest, from making such investigation and rejecting such ballots as not the best evidence at any time before it finally determines who was elected.

Error from Lyon district court; FREDERICK A. MECKEL, judge. Opinion filed February 10, 1906. Affirmed.

## STATEMENT.

THE official returns disclosed that G. F. Arnold was elected to the office of county commissioner from the second commissioner district of Lyon county over his opponent, E. Moorhead. In due time Moorhead commenced a contest for the office, alleging errors and mistakes on the part of the judges, clerks and canvassers of election in ascertaining and declaring the result of the election whereby legal ballots in his favor were rejected, whereby the benefit of ballots cast for him was lost in keeping and footing the tally-sheets, whereby ballots for him were counted for the contestee, and whereby defective and illegal ballots were counted for the contestee. The contestee denied the contestor's claims, and asserted that ballots for him had been thrown out and that mistakes in counting and tallying had been made against him. A contest court was duly organized and a trial begun. Proceedings were then had as follow:

"And thereupon . . . the said clerk produced in court the said ballots cast in Americus precinct. . . .

"Suggestion by the court that the county clerk be sworn and show the custody and identity of the ballots.

"Thereupon the swearing and testifying of W. F. Eggers, as county clerk, was waived by the attorneys for the contestee.

"Thereupon the clerk in open court opened the ballots, which were contained in a gunny-sack and strung upon a cord.

"It was here agreed. by the attorneys for the contestee and contestor that the attorneys should examine the ballots, and such as were conceded to be lawful and valid ballots should be counted for the respective parties, and such as should be excepted to by either party should be passed to the court, marked for identification, and reserved for the further consideration of the court.

"In pursuance of the said agreement the ballots were brought into court in the order of precinct as named in the statement of contestor, and counted in the same order.

"All of the ballots of all of the precincts of the said commissioner district were counted except the ballots from Phillips and Reading precincts, and the contested ballots from the other precincts. Each of the parties took an objection to one ballot for each the contestor and contestee of the ballots from Americus precinct, which objection was overruled and both ballots counted, one for each party, both parties agreeing they were good ballots. And thereupon the court adjourned until nine o'clock A. M. of the 24th of December, 1904.

"On December 24, 1904, the court having convened and all parties being present, it was ordered that said court proceed, and the clerk was ordered to produce the balance of the ballots cast at said election in the said district, and they were produced and counted in the following order: (1) Phillips precinct; (2) Reading precinct.

"The undisputed ballots having been counted by the court, the court then heard arguments of the attorneys touching the validity of the ballots which each side claimed should not be counted.

"Thereupon the court took the matter under advisement until the 27th day of December, 1904, and declared the court adjourned until that date, at nine o'clock A. M.

Moorhead v. Arnold.

"At nine o'clock A. M. on the 27th day of December, the court having met pursuant to adjournment, and all parties being present, the contestee produced W. F. Eggers, county clerk, as a witness in his behalf.

"The contestor objected to the introduction of any evidence for the reason that the same was incompetent, irrelevant and immaterial under the pleadings, no fraud having been alleged by either party, and as tending to throw no light on any issue joined in the pleadings. The said objection was by the court over-ruled, and at the time excepted to by the contestor."

At this point in the record there follow some fifty-eight pages of evidence introduced by both parties relating to the authenticity of the ballots produced by the county clerk as the ballots received by him from Americus township, and relating to the manner in which the ballots cast in that township were counted and the official returns of the election kept. The record also contains the following statement:

"During all of the contest, while any and all of the ballots, or purported ballots, sacks or papers were in the contest court, the same were in the immediate presence of all three of the judges for inspection and were inspected by said judges, except the ballots agreed to by counsel as being valid on their face."

The contest court made elaborate findings of fact and conclusions of law, as follow:

"Our reasons for putting our decision in this contest in writing is that the questions involved are unusual, and we wish to put on record not only what we do, but why we do it. By the official returns Mr. Moorhead received 816 votes and Mr. Arnold 850 votes, giving Mr. Arnold a majority of 34 votes, and he received the certificate of election. In due time Mr. Moorhead filed a contest, putting in issue the count and official returns of each of the election precincts in the commissioner district. A proper determination of this issue involved a recount of all the votes cast in the second commissioner district of this county. What purported to be the ballots cast at each of the nine precincts in the district were brought before the contest court, by the proper custodian of such

ballots, the county clerk, and examined in the presence of the court. Of the ballots counted by several election boards, both contestor and contestee agreed in open court that all but 116 were valid and were counted as such. These 116 were objected to, some by the contestor and some by the contestee, because it was claimed that there were distinguishing marks thereon. As to 64 of the 116 ballots objected to the objections are overruled and the votes counted; as to 52 of them the objections are sustained and they are not counted. Of the objectionable ballots thus counted 36 are Arnold votes and 28 are Moorhead votes, and of the 52 ballots not counted by the contest court 26 are Arnold votes and 26 are Moorhead votes. There were also presented to the contest court, by the contestor, what purported to be 33 ballots cast in the Americus township precinct, which were rejected by the election board, and 4 of these which were Moorhead votes were found not to have distinguishing marks thereon, and so far as any invalidity by reason of any such marks they should have been counted for Moorhead. If these 4 votes are counted and there is added thereto the votes conceded to be valid on their face for Mr. Moorhead, and the 28 objectionable votes counted for him, it will give him 816 votes in the district, while the votes conceded to be valid on their face cast for Mr. Arnold, and the 36 objectionable votes counted by this court for him, will give him but 805 votes in the district, and giving Mr. Moorhead a majority of 11:

"Mr. Arnold, however, objects to the counting by this court of any of the ballots purporting to have been cast at the Americus precinct, for the reason that they have not been preserved as required by law, and were not brought into the contest court in the same condition in which they were left by the election board, and are therefore not as good and safe evidence of the vote cast in the Americus precinct as the returns kept and made by the board to the county commissioners as provided by law. The official returns, as shown by the tally-sheets kept and returned by the Americus election board, give Mr. Moorhead 219 votes, and Mr. Arnold 200 votes. The count by this court of the purported ballots from that precinct gives Mr. Moorhead 239 votes, and Mr. Arnold but 187 votes. Mr. Moorhead's majority on the face of the returns is but 19 in

Americus precinct, and on the count made by this court of the purported ballots from that precinct his majority there is 52, being a difference of 33 votes in favor of Mr. Moorhead, and if that is taken as correct it gives Mr. Moorhead a majority of 11 in the district; but if the count as returned by the election board is taken as the best and safest evidence of the Americus vote, it gives Mr. Arnold a majority of 22 votes in the district. It is therefore apparent that the controlling question of this contest is, Which is the best and safest evidence of the vote cast in the Americus precinct?

"The law makes the count and returns of the election board *prima facie* evidence of the Americus vote, and lays upon Mr. Moorhead the burden of showing by competent evidence that such returns are incorrect so as to affect the result of the election of commissioner in the second commissioner district. The law also makes the ballots, when properly preserved and produced, the primary and controlling evidence, and if such ballots and the returns made by the election board differ, the ballots will control and be admitted as the best and safest evidence. It was said, however, by our supreme court, in *Hudson v. Solomon,* 19 Kan. 177, 186, that 'in order to continue the ballots controlling as evidence, it must appear that they have been preserved in the manner and by the officers prescribed in the statute, and that while in such custody they have not been so exposed to the reach of unauthorized persons as to afford a reasonable probability of their having been changed or tampered with.'

"This principle was announced by Mr. Justice Brewer, now one of the justices of the supreme court of the United States, and has been adhered to by our courts ever since. Other courts have laid down the same rule. In *People, ex rel. Dailey et al., v. Livingston,* 79 N. Y. 279, 290, it was said: 'Every consideration of public policy, as well as the ordinary rules of evidence, requires that the party offering this evidence should establish the fact that the ballots are genuine. It is not sufficient that a mere probability of security is proved, but the fact must be shown with a reasonable degree of certainty. If the boxes have been rigorously preserved, the ballots are the best and highest evidence; but if not, they are not only the weakest but the most dangerous evidence. The jury might not be satisfied with the proof of identity, and yet be unable

to find from the evidence that actual tampering or fraud had been committed.'

"In *O'Gorman v. Richter,* 31 Minn. 25, 30, 16 N. W. 418, the supreme court of Minnesota said: 'It is incumbent, however, upon the party offering the evidence to show clearly, and to the satisfaction of the court, that the ballots have been preserved intact, before they can be admitted.'

"In *Newton v. Newell,* 26 Minn. 529, 540, 6 N. W. 346, the court held that 'it must affirmatively appear that they . . . have been "carefully preserved." They must have been so carefully preserved as to place their identity beyond any reasonable doubt.'

"In the fourth edition of McCrary on Elections, section 472, it is said: 'The burden of proof in such a case does not rest upon the party objecting to the ballots as evidence.'

"Other authorities are to the same effect, and the law is therefore well settled that to entitle Mr. Moorhead to have these Americus ballots counted he must show their identity to the satisfaction of the court, and that they have been preserved substantially as required by law, and if he fail to do so the return of the election board is the best evidence.

"The supreme court of California said, in *People v. Burden,* 45 Cal. 241, that 'if there is evidence tending to show that the ballots cast at an election are not sealed up after being counted by the board of canvassers, or that the packages of ballots have been opened and changed after they were received by the clerk, the ballots on a recount by the board of supervisors are not the best evidence, but the court may adopt the result arrived at by the board of canvassers in determining who is elected.'

"To the same effect is McCrary on Elections, fourth edition, section 474, and other authorities. The evidence shows that the Americus election board strung all the counted ballots on a cord as they were counted, united the ends of the cord by a knot, but did not seal the knot with sealing-wax, as required by law; that after the counting they attempted to put the ballots into the large paper sack or envelope furnished by the county clerk for that purpose; that the string of ballots was too large to go into the large envelope, and in the attempt to put them into it the envelope was torn part way down one side, leaving a portion of the

string of ballots outside; that they then took a gunny-sack, the only thing available, and put the large envelope with the ballots, part in and part out, into it—the gunny-sack—sewed it up, over and over the end with a cord, united the ends of such cord in a knot and sealed the knot with sealing-wax as best they could, and delivered it in that condition to the county clerk at Emporia; that the county clerk kept it with other packages of ballots received from other precincts in the vault in his office, up-stairs in the court-house, for a few days, until he got time to take them to the storage vault in the basement of the court-house, where the gunny-sack remained until a few days before the commencement of the hearing of this contest, when he brought it up to his office vault and placed it in a locker, where it remained until called for by the contest court; that while in the storage vault the gunny-sack was either in a box locked with a pad-lock, the key to which the county clerk carried on his person, or in a box with the lid nailed down; that the county clerk was away from Emporia for at least a week of the time that the gunny-sack was in the storage vault, and that others than himself knew the combination of the lock on the door of the storage vault, although he was not aware of that fact, and he did not know all who did have such knowledge of the combination on that door; that when the gunny-sack was brought before the contest court it was fastened in a different manner from that in which it was sewed up and sealed by the election board; that there was enclosed in the gunny-sack with ballots all, except a piece about six inches square, of a large paper sack or envelope such as was furnished by the county clerk to the election board wherein to return the counted ballots, all torn to pieces, and also a good-sized piece of another similar paper sack or envelope. In other words, there were parts of two similar paper sacks or envelopes enclosed in the gunny-sack said to contain the ballots counted by the election board of Americus precinct, the two parts of the envelope having on each identical printed matter or words. Upon this state of facts we are compelled to sustain the objection to these purported ballots as evidence. They are surrounded with unmistakable evidence of having been opened for some unexplained purpose, and their integrity and identity are thereby destroyed. There is

no evidence tending to show who opened the gunny-sack in which the ballots were delivered to the county clerk, or when it was opened, but there is clear evidence that it was opened by some one between the time it was sealed by the election board and the time it was brought into the contest court, and that is sufficient to destroy the integrity of the ballots contained in such sack as the best and primary evidence. The testimony shows that the ballots have not been preserved so as not to be so exposed to the reach of unauthorized persons as to afford a reasonable probability of their having been changed or tampered with, according to the rule laid down in *Hudson v. Solomon*, 19 Kan. 177.

"It is true that the testimony also shows that certain, and indeed numerous, clerical errors were made by the clerks of election in keeping the tally of votes in Americus precinct, and that no attempt was made to rectify the errors and discrepancies by a recount of any ballots; still the evidence is clear that all such errors were rectified and the tally-sheets corrected to the satisfaction of all the judges and clerks of election, and that to the best of their knowledge and belief every legal ballot was correctly counted and so entered on the tally-sheet.

"We therefore find that the returns of the election board are the best and controlling evidence of the vote cast in Americus precinct. These returns and our recount of the ballots cast in the other precincts in the district give Mr. G. F. Arnold a majority of 22 votes, and we find that he was duly elected commissioner for the second district in Lyon county, Kansas, and we pronounce judgment accordingly."

The district court sustained the contest court, and in this proceeding in error it is urged that the findings of the contest court are not sustained by the evidence; that the question of the authenticity of the ballots from Americus township was outside the issues made by the pleadings; and that an investigation of that matter was waived by the contestee.

*W. C. Harris,* and *W. A. Randolph,* for plaintiff in error.

*Buck & Spencer,* for defendant in error.

The opinion of the court was delivered by

BURCH, J.: In the second volume of Wigmore on Evidence, at page 1345, it is said that the law "assumes the objectivity of external nature; and, for the purposes of judicial investigation, a thing perceived by the tribunal as existing does exist." On the following page of the same work it is further stated:

"There is always a question as to the relevancy of a circumstance, or the qualifications of a witness; there can never be a question as to the relevancy of the thing itself, autoptically produced. Add to this that, since either sort of evidence, testimonial or circumstantial, is one step removed from the thing itself to be proved, the production of the thing itself would seem to be the most natural and efficient process of proof. If the question is whether a shoe is fastened by laces or by buttons, the testimony of one who has seen the shoe or the circumstance that a button has fallen from the shoe can at least be no more satisfactory than the inspection of the shoe in court. Accordingly, it might be asserted, *a priori*, that where the existence or the external quality or condition of a material object are in issue or are relevant to the issue, the inspection of the thing itself, produced before the tribunal, is always proper, provided no specific reason of policy or privilege bears decidedly to the contrary. Such ought to be, and such apparently is, the principle accepted by the courts." (2 Wig. Ev. § 1151.)

In one of the cases cited in support of this text it was said:

"There can be no objection to the other finding, to wit, 'that the plaintiff Nanny is a white woman.' The jury find this fact upon their own knowledge—in other words, by inspection. Was this improper? . . . If the plaintiff Nanny had not been before the jury, they must have found their verdict upon the testimony of others, which would have amounted only to a probability. But here, they have the highest evidence, the evidence of their own senses." (*Hook v. Pagee,* 2 Munf. [Va.] 379, 384.)

This court has gone far enough to uphold a verdict for damages in a railroad right-of-way case for the

expense of constructing and maintaining farm cross-
ings although there was no evidence of the necessity
of such crossings except the jury's view of the land.
(*K. C. & S. W. Rld. Co. v. Baird*, 41 Kan. 69, 21 Pac.
227.)    These authorities control the decision of the
first question presented.

There is no dispute concerning the manner in which
the election board of Americus township disposed of
the ballots cast in that precinct as they were counted
and after they were counted.    There is ample evidence
to sustain the finding of the contest court in reference to
the manner in which the ballots were kept and exposed
after they were returned to the county clerk and before
they were brought into court.    The members of the
contest court needed no witnesses to tell them what they
saw when the gunny-sack containing the supposed bal-
lots was brought before them, and when it was opened.
The record is specific upon the point that they did in-
spect the sack and its contents at that time.    However
strange it may seem that the bag should have been
tampered with, this court cannot contend with the
judges of the contest court in reference to the report
of their own senses.    Therefore this court cannot de-
clare to be unsupported an unequivocal finding that
the receptacle in which the ballots were kept was
fastened in a different manner from that in which it
was sewed up and sealed by the election board, and that
it contained matter which the election board did not
place there.    Besides, the finding under consideration
is supported by the testimony of one of the attorneys
for the contestee, and by an inference from the testi-
mony of one of the election officials of Americus town-
ship, so that the rule, sometimes invoked, that evidence
obtained by inspection must be supplemented by evi-
dence capable of being embodied in a bill of exceptions,
has been complied with.    (See *City of Topeka v. Mar-
tineau*, 42 Kan. 387, 391, 22 Pac. 419, 5 L. R. A. 775.)

The proceeding in this court is one in error.    The
facts cannot be retried here.    Disputed evidence cannot

be weighed at all, and if an attempt were made to do so the most enlightening piece of information the contest court received—that afforded by an inspection of the bag and its contents—is unavailable.

The facts found bring the case clearly within the rule announced by the authorities cited and relied upon by the contest court, and the rejection by that tribunal of the ballots offered by the contestor as primary evidence to establish his claim must be sustained. The evidence was clearly sufficient to warrant the contest court in adopting the official returns as the next best evidence of the result of the election in Americus township, and its conduct in that respect is approved.

The complaint that the question which was raised concerning the authenticity of the papers produced by the contestor as the ballots from Americus township is not referred to in the pleadings is clearly not ground for reversal. The objection was to the introduction of certain papers not the best evidence. The facts upon which the objection was based did not constitute a defense to the contestor's claim, and would not have done so even if they had been stated in the answer. His causes of contest still might be true and easily provable, and certainly it is not permissible to plead in an answer facts merely as a foundation upon which to base objections to evidence which it is anticipated the moving party will use at the trial to sustain the allegations of his pleading. An answer subserves other purposes. Its function is limited to the definition of issues.

In this case the issue was the number of lawful ballots that had been cast at an election and the number which each of two candidates had received. The burden of proving that he had a majority rested upon the contestor. He offered in support of his claim certain papers taken from a bag produced by the county clerk. Then the inevitable question arose, What were those papers, and what persuasive effect ought to be conceded to them under the law? If they were genuine

ballots they were important; if they were not genuine, or if they had been subjected to fraudulent manipulation, they possessed no evidential value. Therefore a preliminary investigation became essential in order to decide, not who was elected, but if this evidence tendered by the contestor in support of his claim could be admitted. This preliminary question was not different from innumerable others of analogous character constantly arising in the course of trials of questions of fact, and that it had no place in the pleadings, and no effect whatever to enlarge the issues, is too obvious to require further comment.

It is said that the record fails to note a specific objection to the reception in evidence as genuine ballots of the papers produced as such. The parties examined and cross-examined many witnesses and filled many pages of the record with testimony bearing upon the authenticity of the returns from Americus township in all respects as if some serious question regarding them had arisen. The record bears internal indications that the contestor was fully aware of the point toward which the investigation tended. He introduced evidence which to the mind of this court strongly supported the proposition that the returns were uncorrupted. Even if the contestee interposed no objection the contest court was not obliged to count spurious returns. The action of that court was clearly described in its written findings, and accident and surprise are not argued as grounds for a new trial. Therefore the parties are bound in all respects as if the record contained the formal verbal expression which the contestor insists should have been employed.

The objection that the contestee waived all questions relating to the identity and trustworthiness of the ballots from Americus township is not sustainable. If the same rule were applied to the contestor which he invokes against the contestee, the matter could not be considered. The objection of waiver now made was not urged upon the trial court. It is not necessary,

Moorhead v. Arnold.

however, to rest a decision upon such narrow ground. The contestor makes no attempt to show that he was injured by the reopening of the case. He asked for no delay, claimed no change in circumstance or modification of condition rendering the inquiry prejudicial, produced witnesses in his own behalf, and participated in the proceeding until he voluntarily rested. Nor is there any element of estoppel in the case. The contestor was not induced to give up any rights on account of what the contestee did. Besides this, the public had an interest in the contest which the rival claimants to the office could not barter away. Arnold and Moorhead could not bind the contest court by an arrangement that one of them should be elected by a canvass of unidentified returns, and the court was not obliged to rest under the imputation that its findings were based upon a count of illegitimate ballots. It had the right to demand the production of further evidence if it saw fit, and to open the proceedings for that purpose. Upon the suggestion to it of suspicious facts it was not only authorized, but was under obligation, to take the steps necessary to ascertain the truth.

The propriety of the court's conduct in opening the case is not to be determined by the result of the hearing, and the contestor really has no substantial complaint to make except that the court found against what he believes to be the weight of the evidence. If his position upon that subject be correct, the record is such that under the established rules of law this court can grant no relief. Therefore, the judgment of the district court is affirmed.

All the Justices concurring.