(February 25, 1913.)

## CITY OF POCATELLO, a Municipal Corporation, Plaintiff, v. JAMES A. MURRAY, Doing Business as THE POCATELLO WATER COMPANY, Defendant.

[130 Pac. 383.]

MANDATE—COMPLIANCE WITH CONTENTS—COMMISSIONERS TO FIX RATES —QUALIFICATION—TAXPAYER.

1. Sec. 2839, Rev. Codes, provides that commissioners selected under the provisions of such act are to be taxpayers of such town or city, and "taxpayer" of such town or city, as used in this statute means one who owns property within the municipality and who pays a tax or is subject to or liable for a tax.

2. Where W. and M. are appointed commissioners under the provisions of sec. 2839, Rev. Codes, and the question arises as. to whether or not such persons are taxpayers, and it is shown that such persons own certain real property jointly, each owning a one-half interest, and it is also shown that such property was assessed in the name of M., and the taxes are paid upon said property by W. and M., each paying one-half of the total amount, *held*, that W. and M. are each taxpayers under the statute.

3. The fact that commissioners appointed by a person, company or corporation supplying water to towns and cities under the provisions of sec. 2839, Rev. Codes, have been and are employees of the person, company or corporation, and that one of such commissioners was the general manager of such person, company or

corporation, and as such manager contested and opposed the fixing of the rate to be charged for the use of water furnished by the person, company or corporation in previous negotiations between the city and such person, company or corporation in order to agree upon a rate, does not necessarily disqualify such persons from acting as commissioners if appointed under the provisions of such section.

An action to show cause why the defendant should not be punished for contempt. Action dismissed.

P. C. O'Malley and Clark & Budge, for Plaintiff.

A taxpayer is one who owns property in the state and on which he regularly pays taxes. (*Lasityr v. City of Olympia,* 61 Wash. 651, 112 Pac. 752; *State v. Fasse* (Mo. App.), 71 S. W. 745; *Thompson v. Newtown,* 21 N. H. 595.)

Bearing upon the question as to who may act as arbitrators: 3 Cyc. 1617 (Qualification of Arbitrators); 2 Lewis on Eminent Domain, sec. 620; *Locke v. Highway Commissioners,* 107 Mich. 631, 65 N. W. 558; *King's Lake Drainage Com. v. Jamison,* 176 Mo. 557, 75 S. W. 679; 15 Cyc. 885 (Qualification Commissioners in Eminent Domain).

This is a different proposition from merely being a taxpayer. (*Higgins v. City of San Diego,* 126 Cal. 303, 58 Pac. 700, 59 Pac. 209.)

Norman M. Ruick, for Defendant.

The question resolves itself, whether or not George Winter was a "taxpayer" of the city of Pocatello at the time of his appointment to act as commissioner.

Taxpayer is defined as:

"One subjected to or liable for a tax." (English Law Dictionary.)

"Taxpayer. A person chargeable with a tax; one from whom government demands a pecuniary contribution toward its support." (Black's Law Dictionary.)

"Taxpayer. One who pays any tax, or is liable to the payment of any tax." (Standard Dictionary.)

To pay taxes is surely to constitute one a taxpayer, regardless of the form or manner of the assessment. (*Commonwealth v. Shrontz,* 213 Pa. 327, 62 Atl. 910.)

The functions of a commission of this character are administrative and not judicial. Therefore, the office of commissioner is not analogous to that of either arbitrator or judge, although, even in the case of an arbitrator, there are numerous cases which hold that he is the representative of the party naming him; that he is selected by reason of his friendship for one of the parties, and that this condition does not disqualify him. (*Reily v. Russell,* 34 Mo. 524, 528; *Silver v. Connecticut River Lumber Co.,* 40 Fed. 192, 194; Wyman on Public Service Corporations, secs. 1403, 1404, 1408.)

STEWART, J.—An application was filed in this court by the appellant praying for the issuance of a writ of mandate directed to the defendant commanding and requesting him to appoint commissioners in conformity with the provisions of sec. 2839, Rev. Codes, for the purpose of conferring and acting with the commissioners appointed by the plaintiff, and fixing and determining rates to be charged by the defendant for water furnished to plaintiff city and the inhabitants thereof. A demurrer was filed to the complaint and overruled, and an answer to the complaint was filed. The case was heard upon the pleadings. In the opinion in that case, reported in 21 Ida. 180, 120 Pac. 812, this court ordered that mandate issue to the defendant commanding him to appoint commissioners in accordance with the provisions of sec. 2839 of the Rev. Codes. The writ of mandate was issued on the 30th day of January, 1912, and served on respondent on the 3d day of February, 1912. A writ of error was taken thereafter from such decision to the supreme court of the United States, where said cause was heard, and the judgment of this court affirmed. (*Murray v. Pocatello,* 226 U. S. 318, 33 Sup. Ct. 107. A *remittitur* from the supreme court of the United States in said cause was filed in this court on the 28th day of January, 1913.

There were no other proceedings in this court in the case until the 31st day of January, 1913, at which time an application was made to this court upon the affidavit of J. M. Bistline, acting mayor of the city of Pocatello, wherein this court was asked to make an order directing James A. Murray to show cause why he should not be punished for contempt for his failure and neglect to appoint commissioners as required by the peremptory writ of mandate issued out of this court on the 30th day of January, 1912. Upon such application this court issued an order in accordance with such application and the service of the same was waived.

After such order was entered the defendant appeared and filed a motion to set aside and quash the part of the application demanding a receiver, on two grounds: First, want of jurisdiction of this court, and, second, that the affidavit does not state facts sufficient to authorize the appointment of a receiver. A motion was also filed to strike out certain parts of the affidavit of Bistline filed in support of the application for the order to show cause, on the ground that neither the affidavit of Bistline nor any other paper filed in support of the application for the order to show cause authorizes or justifies the appointment of a receiver. At the same time the defendant filed an answer and denies that he failed to obey the mandate of this court dated January 30, 1912, and alleges that immediately on the decision of the supreme court of the United States, on January 24, 1913, and prior to the date upon which the writ of mandate from the supreme court of the United States was filed, January 28, 1913, the defendant selected two commissioners in the persons of George Winter and Alex Murray, residents and taxpayers of said city of Pocatello, to act with the commissioners theretofore appointed by the said city of Pocatello to fix and determine the rates to be charged for water furnished by the defendant to said city and the inhabitants thereof; and on the 24th day of January, 1913, served upon Bistline, the mayor, a notice of such appointment and received from the mayor an acknowledgment that such commissioners had been appointed; that thereafter, on the 28th day of January, J. H. Townsend and W. P. Havenor, the

commissioners appointed by the city of Pocatello as members of said commission for the purpose of fixing and determining said rates, pursuant to the mandate of this court, served upon George Winter and Alex Murray, commissioners selected by the defendant, the following notice:

"To George Winter and Alex Murray:

"The undersigned heretofore appointed as commissioners by the City of Pocatello, pursuant to the provisions of Section 2839 of the Idaho Revised Codes are now ready to proceed to fix the rates and charges to be charged for water by James A. Murray doing business under the firm name and style of the Pocatello Water Company, pursuant to the resolution of the City Council passed upon the 6th day of July, 1911, and served upon you on the 15th day of July, 1911. We, therefore, demand of you, the commissioners appointed by said James A. Murray, that you immediately meet with us at such place as may be mutually agreeable to enter upon the consideration of the question of fixing such water rates. We suggest that the room in the City Building on the East Side will be a suitable place, and that 10:00 o'clock A. M. Wednesday, January 29, 1913, will be a suitable time to hold such meeting for the purpose of entering upon a consideration of the question of fixing said rates. In the event of your refusal to comply with this request and immediately enter upon the consideration of said matters the undersigned will apply to the Probate Court of this County to appoint a fifth commissioner to act with the undersigned and yourself in fixing such rates, and the undersigned together with such fifth commissioner will enter upon the fixing of such rates.

"Dated at Pocatello, Idaho, this 28th day of January, 1913.

"J. H. TOWNSEND.

"W. P. HAVENOR."

It is then alleged in said answer that in pursuance of this notice Winter and Murray, on the 29th day of January, 1913, proceeded to the place suggested in such notice and there met Townsend and Havenor, and that such commissioners then and there proceeded to effect a temporary organization by the elec-

tion of W. P. Havenor as chairman and Alex Murray as secretary. A copy of the proceedings of said commissioners is made a part of the answer and is as follows:

"1st Meeting: Wednesday January 29, 1913—East Side Fire Station.

"Meeting called to order at 11:15 A. M.

"Present: Mr. Havenor, Mr. Townsend, Mr. Winter, Mr. Murray.

"Motion regularly made and seconded to appoint Mr. Havenor chairman of the Board. Motion carried.

"Motion regularly made and seconded to appoint Mr. Murray secretary of the Board. Motion carried.

"Mr. Ruick and Mr. O'Malley were present and made a few remarks.

"Regularly moved and seconded that Board adjourn until 2:00 P. M. Motion carried.

"Meeting adjourned.

"2d Meeting: Wednesday, January 29, 1913—East Side Fire Station.

"Meeting called to order at 2:30 P. M.

"Present: Mr. Havenor, Mr. Townsend, Mr. Winter, Mr. Murray.

"Motion regularly made and seconded to adjourn until February 10. Motion carried.

"ALEX MURRAY,

"Secretary."

Accompanying this answer is the affidavit of Winter, wherein he states that he is a taxpayer of such city and county and owns property subject to taxation, and which was assessed for the year 1912 in the sum of $12,500, and that such property is referred to in the affidavit of Alex Murray and is described in said affidavit, and that the affiant has been the owner in fee simple of an undivided one-half interest in said property since the 8th day of June, 1912, and is still such owner, and contributed to and paid one-half of the taxes assessed thereon for the year 1912; and that during his residence

in Pocatello he has always been an owner of property subject to taxation and paid all taxes assessed against the same; that he was selected together with Alex Murray as a commissioner to act with the commissioners appointed by the city, and that the city was notified of such fact and acknowledged such appointment; and that the four commissioners appointed met and organized as shown by the minutes of the meeting of the board; and that he is in no way biased or prejudiced in the adjustment of the rates and has no feeling antagonistic to the city, but that after consulting with his principal, Murray, and under his advice, he has resisted a readjustment of the rates except in accordance with the provisions of the ordinance of June 6, 1901, of said city, as Murray understood said ordinance; that as one of the commissioners appointed by Murray to fix rates he has held, and now holds himself in readiness to act promptly and without delay in the adjustment of said rates as a member of the commission appointed for such purpose.

An affidavit was also filed on behalf of the defendant by Alex Murray, in which he says that he is the owner of property in Pocatello subject to taxation and which was taxed therein, and that such property is an undivided one-half interest in the real property situated in said city of Pocatello known as the Auditorium, which property appears upon the assessment-roll of said city and county for the year 1912 in the name of "Monidah Trust," a corporation, and that since the 5th day of June, 1912, affiant has owned in fee simple the title to a one-half undivided interest in said property, and the other one-half interest in said property has ever since the 8th day of June, to the knowledge of affiant, been owned in fee simple by George Winter, co-commissioner of affiant, and superintendent of the Pocatello Water Company, and agent and representative of James A. Murray; that said property was regularly and duly assessed in said city and county by the assessor thereof for the year 1912 at $25,798, the total tax for said year being $830.68, one-half of which said tax, $415.34, was paid to the tax collector of said Bannock county within the time allowed therefor and prior to the same becom-

ing delinquent for the said year 1912; that one-half of said sum so paid was paid by, for and on behalf of said George Winter; that the affiant was appointed a commissioner and notice of such selection was served on the mayor of the city and a receipt of such notice was acknowledged by the mayor; and on the 28th day of January, 1913, affiant received from the commissioners appointed by the city the same notice as is set out in the affidavit of Winter, and in pursuance of such notice he attended the meeting and participated in the proceedings.

At the time of the hearing an affidavit was filed on behalf of the application of Bistline, the mayor, by one L. B. Case, assessor and tax collector of Bannock county from June 6, 1912, up to and since January 13, 1913, in which he states that he knows George Winter, and that the name of George Winter does not appear upon the assessment-roll for the year 1912, and that no property situated within the said city was assessed to George Winter upon said assessment-roll; neither did George Winter pay any taxes upon any property situated in the city of Pocatello.

On February 6th an affidavit was filed upon behalf of the city by P. C. O'Malley, city attorney of Pocatello, who says that he has read the affidavits of Winter and Murray and has made inquiry as to the present ownership of the property described as the Auditorium building in the city of Pocatello, in which property both Alex Murray and George Winter swore that they own a one-half interest, and on the 6th day of February, 1913, was informed by telephone by E. G. Gallet, the recorder of Bannock county, that the property known as the Auditorium of Pocatello stands on the records of Bannock county in the name of Alex Murray, and in the name of Alex Murray alone; that it was transferred from James A. Murray to Alex Murray about the month of June, 1912; that the property is not on the deed record in the name of the Monidah Trust Incorporation; that since the 5th day of June, 1912, Alex Murray has owned in fee simple the entire property known as the Auditorium building in Pocatello according to the deed records of Bannock county; that L. B. Case told the

affiant that the property was on the assessment-roll in the name of Monidah Trust, but that Alex Murray himself paid the taxes and that Murray told Case the day he paid the taxes that the property should not be assessed in the name of Monidah Trust; that he owned the property individually; that the Monidah Trust Incorporation was incorporated in May, 1907, the incorporators being James A. Murray, Alex Murray, George Winter and a man by the name of King, and others; that the records of the Secretary of State show that the life of the Monidah Trust is under suspension since the 1st day of December, 1912.

The foregoing pleadings and the affidavits on behalf of the respective parties constitute the entire record and all the facts upon which this court must determine whether or not the defendant is guilty of contempt for failure to comply with the mandate of this court in the appointment of commissioners under the provisions of sec. 2839 of the Rev. Codes. This section reads as follows:

"All persons, companies, or corporations supplying water to towns and cities, must furnish pure, fresh and healthful water to the inhabitants thereof for family use, business houses, lawns and all domestic purposes so long as their supply permits, without distinction of person, upon demand in writing therefor, under such reasonable rules and regulations as the person, company, or corporation supplying water, may, from time to time, establish, and at such rates as established in the manner hereinafter specified; and must also furnish water to the extent of its means in case of fire, or other great necessity, at reasonable rates established in the manner hereinafter specified.

"The rates to be charged for water must be determined by commissioners to be selected as follows: Two by the town or city authorities, or when there are no town or city authorities, then by the board of county commissioners of the county, the two said commissioners so selected to be taxpayers of such town or city; said town or city authorities must, within ten days after the appointment of the two commissioners so selected, give notice in writing to said person, company, or

corporation supplying water, of the appointment of such commissioners, and the names of each, and within thirty days thereafter two other commissioners, taxpayers of said town or city, must be selected by the person, company or corporation supplying water, and in case a majority of the four commissioners so selected cannot agree on the rates to be fixed, they must select a fifth commissioner, who must also be a taxpayer of such town or city, and if they cannot agree upon a fifth commissioner, then the probate judge of the county, must, within ten days after notice to him by said commissioners, that they are unable to agree upon a fifth commissioner, select a fifth commissioner qualified as aforesaid. The decision of a majority of the commissioners thus selected must fix and determine the rates to be charged for water for all the uses and purposes heretofore specified, for the ensuing three years from the date of such decision, and until new rates are established as herein provided. The decision of such commissioners so selected must be made within ninety days from the date such board of water commissioners is complete: Provided, That any person, company, or corporation supplying water, and failing or refusing within the time above specified to appoint such commissioners so required of them, shall forfeit the sum of one hundred dollars per day for every day thereafter and until such commissioners are appointed: Provided, further, That nothing in this section contained shall relieve said town or city authorities from their duty to appoint the commissioners herein specified within a reasonable time after the granting of a franchise to any person, company, or corporation to supply water as aforesaid: Provided, further, That said commissioners shall receive a reasonable compensation for their services in establishing such water rates, one-half of said sum to be paid by the town or city, and one-half by such person, company, or corporation supplying water: Provided, further, That said commissioners shall be empowered to incur any other expense that may be necessary to aid them in establishing such water rates, and one-half of such expense shall be paid by the city or town, and the other half by such person, company, or corporation supplying water.''

It will be observed from the provisions of this section of the statute that the only qualification fixed by such statute is, "taxpayers of such town or city." The affidavit upon which the charge of contempt is based charges, first, that George Winter was not, on the date of the service of said notice, and has not been for more than one year last past, a taxpayer of the city of Pocatello, Bannock county, Idaho, and for that reason said defendant has made no appointment of commissioners as required by the peremptory writ of mandate dated the 30th day of January, 1912; second, that George Winter for many years, and continuously, has been superintendent and managing agent of Murray, and in charge and control of the water system of the defendant in said city, and has been a party to numerous controversies between the defendant and the city relating to the operation of the water system in said city and the supply of water and water service, and has continuously opposed the city in its efforts to improve conditions with reference to the supply of water and the service and the readjustment of rates, and is biased against the city as regards a readjustment of the unreasonable rates and charges, and that he is not a proper person to act upon said commission within the provisions of the section.

In the affidavit charging the failure to comply with the mandate of this court there is no allegation or charge that Alex Murray was not qualified or was in any way prejudiced against the plaintiff. There is, however, a statement in one of the affidavits that Alex Murray is an employee of James A. Murray in connection with his water system in said city, and has been connected with and interested in numerous controversies between the defendant and the city, and for that reason is prejudiced and biased against the city and is not competent to act as commissioner, and therefore his appointment was not in accord with the mandate of this court and with the statute providing for the appointment of commissioners. This latter charge against Murray, however, is not stated in the affidavit charging the contempt, and was not a part of the charge made upon which this court issued the order requiring the defendant to show cause.

It is alleged in the answer of defendant Murray that as soon as he learned of the decision of the supreme court of the United States he selected two commissioners who were taxpayers of the city of Pocatello, in pursuance to law and the mandate of this court, to act with the commissioners appointed by the city to determine the rates to be charged for water furnished by him to said city and the users of water under said system, and that such commissioners were George Winter and Alex Murray; that such commissioners so appointed by him were requested by the commissioners appointed by the city to meet on the 29th of January, 1913, and proceed to organize, and that a meeting was had by the two commissioners Winter and Murray appointed by the defendant and the two commissioners appointed by the city, J. H. Townsend and W. P. Havenor, and that such commissioners did organize and elect a temporary chairman and secretary, and two separate meetings were held, and by such action on the part of the city the city approved and recognized the appointment by the defendant of the two commissioners Winter and Murray, and that the commissioners appointed by the city acted with them and organized and selected officers to act in such matter, as provided by law.

It is also alleged in the answer, and the facts so alleged are clearly supported by the evidence, that George Winter and Alex Murray were joint owners of property in the city of Pocatello, Bannock county, Idaho, each owning a one-half interest, to the value of $25,000, and that such property was acquired by deed conveying a fee simple title executed upon the 8th day of June, 1912, and that such property was regularly and duly assessed in said city and county by the assessor thereof for the year 1912 at $25,798, the total tax for said year being $830.68, and that one-half of said tax, $415.34, was paid to the tax collector of Bannock county within the time allowed therefor and prior to the same becoming delinquent for said year, and that one-half of said sum so paid was paid by and for and on behalf of George Winter, and the other half paid by Murray upon the one-half interest he owned in said property.

If this be true, Winter and Murray were joint owners of said property and the title was taken in the name of Murray and the property was assessed to Murray and each of the joint owners paid his proportionate share of the taxes assessed and paid upon said property. From these facts it necessarily follows that each of said parties was a taxpayer within the meaning of the statute in controversy in this case. A taxpayer is one who owns property within the municipality, and who pays a tax or is subject to and liable for a tax. This qualification, however, would not apply to a person who actually owns property and who wilfully and purposely covers up his ownership and conceals his title for the purpose of avoiding the payment of taxes.

In the case of *Lasityr v. City of Olympia,* 61 Wash. 651, 112 Pac. 752, the supreme court of Washington, in defining taxpayer when applied to the qualification of a juror, said: "We are inclined to agree with the respondent that a taxpayer, within the meaning of this statute, is a person owning property in the state, subject to taxation and on which he regularly pays taxes."

The court of appeals of Missouri, in the case of *State ex rel. Sutton v. Fasse* (Mo. App.), 71 S. W. 745, defines taxpayer as "a person owning property in the state subject to taxation and on which he regularly pays taxes."

The statute now under consideration contains no provision which requires that the name of the person appointed as commissioner should appear on the tax-roll, or that he should be a holder of property in severalty if in fact it is shown that he pays the taxes upon the interest he has in the property, although the title stands in the name of another. This doctrine is fully supported in the case of *Commonwealth ex rel. Underwood v. Shrontz,* 213 Pa. 327, 62 Atl. 910.

Other cases might be cited, and it will generally be found that the courts do not agree as to the exact definition of a taxpayer, but we think the true and correct rule which we have announced above should be applied where it is used in connection with an official in fixing the qualifications to hold office or perform a duty of trust and honor in behalf of a munici-

pality and a public service corporation in fixing rates for the use of water furnished by the public service corporation to the municipality and its inhabitants. The mere statement of the assessor that the name of Murray does not appear on the tax-roll as shown in the affidavits filed by plaintiff in support of the application to punish for contempt, and that he did not pay any taxes in Pocatello or Bannock county during the year 1912 or up to the time of this action, does not overcome the showing made by the defendant in the record in this case.

We conclude, therefore, and hold in this case that the record clearly shows that George Winter and Alex Murray were taxpayers at the time they were appointed as such by the defendant and continued to be so up to the time this proceeding was commenced.

It is next contended on the part of plaintiff that the two commissioners appointed by the defendant are incompetent by reason of the fact that they are employees of Murray and have been engaged in controversies that have taken place between Murray and the city in which they have taken an interest adverse to the city. The statute also requires the city to appoint commissioners to act on its behalf, and the commissioners appointed by the city must be taxpayers; such commissioners may be users of water, and they might also be prejudiced by reason of the fact that the company has been exacting exorbitant rates and they want a lower rate, and therefore they might likewise be disqualified. In this respect it was argued in the case that one of the commissioners appointed by the city was the city engineer employed by the city, and he might be prejudiced against the corporation and in fixing rates might favor the city. So the legislature fixed no qualification as to whether the person appointed commissioner should in any way be interested in the controversy, and no doubt made no such provision because it would be one which perhaps would exclude every property owner within the city limits and would force the parties to go outside the municipality to secure commissioners to act, and for that reason they

left the question open to be determined after the board had fixed the rates by proper proceeding.

There can be no question but that the action of the board in fixing rates might be questioned in a proper proceeding, where it appears that such board, by fraud or through unfair means, fixed rates which were unreasonable and exorbitant, and as a result of such acts a greater charge was determined than would have been made if the board had been fair and honest and not prompted to act by reason of bias or prejudice or feeling against any of the parties to the action.

In this case the four commissioners appointed by the respective parties seem to be in perfect harmony, and there is nothing in their proceedings which would indicate in any way favoritism or partiality to either party. If in their joint actions they cannot agree, the statute provides that they must select a fifth commissioner who shall also be a taxpayer of such town or city, and if the commissioners cannot agree upon a fifth commissioner, then the probate judge of the county must, within ten days after the notice to him that they are unable to agree upon a fifth commissioner, select a fifth commissioner qualified as provided by law.

If Winter and Murray are unfair and will not agree to a reasonable rate, the probate judge after notice is required to appoint a fifth commissioner, and there is no showing in this case but that the probate judge would appoint a commissioner who would be fair and have the qualifications fixed by the statute and do what was right in fixing the rates to be charged by the defendant for the use of water within said city. No injustice can occur under this process, and the city or the users of water can in no way be injured or suffer from the appointment of Winter and Murray.

It appearing, then, that both the city and the defendant have appointed commissioners who are qualified under the statute, and that such commissioners have met and organized for the purpose of fixing the rates, the statute requires such board to meet and proceed in accordance with law, and if such commissioners are unable to agree, then the fifth commissioner should be selected as provided by the statute, and a

majority of the commissioners thus selected must fix and determine the rates for the ensuing three years from the date of such decision and until new rates are established as herein provided. It will thus be seen that even if Winter and Murray show by their actions as such commissioners that they are prejudiced against the city or favor the defendant in fixing such rates, their action cannot control or determine the rates, for the controlling power lies in the hands of the two commissioners appointed by the city and the fifth commissioner, appointed by agreement, or by the probate judge, and the city cannot suffer from the appointment of Winter and Murray as commissioners.

The motion filed to strike out certain parts of the affidavit is covered by the opinion upon the merits and needs no further consideration. The motion filed to set aside and quash the part of the application demanding a receiver becomes immaterial under the views of this court, and requires no further consideration.

Under these views the defendant is not guilty of contempt. The facts do not justify the punishment of the defendant for contempt, but show that he has fully and completely obeyed and followed the mandate of this court in the appointment of commissioners, and that such commissioners were appointed in accordance with the provisions of sec. 2839, Rev. Codes.

This action, therefore, is dismissed, and the defendant is awarded costs.

Sullivan, J., concurs.

AILSHIE, C. J., Dissenting.—It is manifestly the real purpose of this proceeding to have the court determine whether the two commissioners appointed by the water company are qualified and competent to act. It should be remembered that James A. Murray is the Pocatello Water Company and that he has not had himself incorporated. Murray does not live in Idaho, and service of process cannot be had on him personally. When he wants to act personally in Idaho, he does so through an agent or attorney, and it is an admitted

fact in this case that he did not make these appointments himself but that they were made by his superintendent and manager, Winter. In other words, Winter, as superintendent and manager of the water company, appointed himself and another employee of the company as commissioners to fix the rates to be charged by the water company to water users from that same company. If these same people are already charging an exorbitant and unreasonable rate to the consumers and there is a demand for a commission to fix reasonable rates, how can anyone suppose these same men on a commission are going to help matters any or give a more reasonable rate? The very fact that the statute authorizes the appointment to be made by the parties interested implies that they should not act themselves or appoint themselves on the commission. The term "commissioner" itself as used in the law signifies a person who is charged with a public or private trust to be executed for others than himself. (*State v. Morris Canal & B. Co.*, 14 N. J. L. 411; 8 Cyc. 335.) Does anyone suppose for a moment that the people of the city of Pocatello can have rates fairly established by a water commission on which body the two principal officers and employees of the water company are serving as commissioners? I have not the least idea that the legislature ever meant or intended that any such thing should happen under this statute. I cannot yield my consent to such a construction of the statute. If Mr. Murray, doing business as the Pocatello Water Company, wants to be fair and square with the water users of the city of Pocatello in the matter of fixing water rates, he will appoint two fair-minded, disinterested men to act and co-operate with a like number appointed by the city and have honest and fair rates established. It does not matter what rates may be fixed by a commission on which two of his principal employees are members; it will never satisfy the people for this very reason.

There is another reason why these men should not be allowed to serve on this commission, and that is, *they are not taxpayers*. The statute says they must be "taxpayers of such town or city." *A taxpayer is one who pays taxes.* We may hunt up all the legal definitions possible and get all the learn-

ing that has been displayed in defining the term, and we will never arrive at the point where we can fairly and rightfully say that a man is a taxpayer who has never been assessed and paid taxes. It is established beyond doubt by the affidavits of the officers of Bannock county that Winter was not assessed for the year 1912 in the city of Pocatello and that he paid no taxes whatever to the county. If he owned property, or, rather, had the equitable title to property that stood on the record of Bannock county in the name of someone else, and the person in whose name the property stood paid the taxes, and Winter thereafter paid the holder of the legal title, he was merely paying a debt and not a tax. It is well established that a tax is merely a lien upon the property and is not a debt against the individual. In order for him to be a taxpayer, he must pay taxes in the regular way rather than pay his debt to an individual. A man cannot cover up his property by having the legal title carried on the records in the name of a corporation or another person and thereby avoid the responsibilities and liabilities attaching under the law to a freeholder and taxpayer in those cases wherein he wishes to be relieved of such duties and obligations, and, on the other hand, come in and introduce proofs extraneous to the record for the purposes of showing that in fact he is a freeholder and taxpayer when to do so will prove to his advantage. In other words, the law expects and justice should demand that he do business on the level, and that what would be legal and fair when the demands are coming his way is no greater or more favorable than when the demands are against him. So far as the records of Bannock county are concerned, they show that Winter was neither a property owner nor a taxpayer within the city of Pocatello for the year 1912. It is likewise shown that Alex Murray did not own the legal title to the Auditorium property prior to the 5th of June, 1912, and that prior to that time no assessment had been made against him. The Monidah Trust Co., which he claims was holding the record title to this property while he was the equitable and true owner of the property, appears to be one of James A. Murray's corporations, organized by Murray and his employees

913, the appointees should be ... time the duty devolved upon him, ... 1. In other words, as I understand ... y of both the city and Murray to appoint ... no are not only qualified at the time of the ... it who were qualified at the time the duty de- ... hem under the law to make the appointment. If ... ule is to prevail, it will leave it in the hands of de- ... killful and rapacious individuals and corporations ... the discharge of a duty devolving upon them by stat- ... ch as this, until such time as they can qualify some ... l agent or person for the position they want filled, in- ... of making the appointment or performing the act at the ... e the law devolves the duty upon them.

These appointments should have been made and rates established more than a year ago. If the contention of the city and the people of Pocatello be correct, then the rates are too high, and when a just and reasonable rate is established by a

state and the rights of the p...
company. After delaying the m...
a half, its agent finally appoints the...
serve on a commission to fix water rates, a...
shows that one of these employees, the su...
general manager, has been in constant conflict...
users and the people of Pocatello.

There is no question whatever in my mind but...
tion taken by Murray, or rather by his superintende...
utterly fails to comply with the statutes of the stat...
a clear evasion and violation of the same. It ought...
be sanctioned by any court. I therefore dissent fro...
views expressed by my associates.

in the Pocatello Water Co., and the Auditorium property appears to have been held in the name of the Monidah Trust Co. until the transfer in June, 1912, was made to Alex Murray.

Now, it seems to me that another important fact has been lost sight of in the discussion of this case, namely, the time or date when the duty devolved on Murray to appoint these commissioners. The city of Pocatello appointed its commissioners in 1911, and it was then the duty of Murray to make his appointment. He refused to do so, and refused to obey the provisions of the statute. The city commenced its action to compel him to make the appointment. He still declined and the case was heard, and on the 30th of January, 1912, this court issued its writ of mandate requiring him to make the appointment. It was then his clear legal duty to make the appointment. He still declined and refused to comply with the order of the court until he could carry the matter to the supreme court of the United States, and it was not until after the *remittitur* came from the supreme court of the United States that he made any effort whatever or pretense at complying with the statute of this state. While he did not make the appointments until 19

such as were qualified at the

namely, in the year 191

the law, it is the dut

commissioners w

appointment b

volved upon t

any other r

signing, s

to defer

ute, su

specia

stea

tin

commission, it will be lower than that now being charged by the water company. The question arises at once: If a fair commission should fix a rate lower than that which has been charged during the time Murray has been contesting this matter in the courts, would not the city and the water users be entitled to recover the overcharge which the company has collected during the time it has been holding this matter up and preventing the establishment of rates? If the overcharge cannot be collected from this company, then there would clearly be a premium placed on the company for resisting the operation of the law and the orders of the court. This overcharge may be found to run into the thousands of dollars and to far more than pay the expense of the litigation. If a rate fixed by this commission would attach and relate back to the time that the company should have appointed its commissioners if it had followed the law, then I fail to see how one who was not then qualified to act on the commission could act on the commission under these circumstances and conditions at this late date.

This case shows a flagrant disregard of the statutes of the ... ople of Pocatello by this water ... atter for nearly a year and ... company's employees to ... nd the record clearly