**KIMBERLIN et al. v. BOARD OF COM'RS OF GARVIN COUNTY.**

No. 11208—Opinion Filed April 13, 1920.

(Syllabus by the Court.)

1. **Elections—Legality of Ballots Cast—Burden of Proof.**

When an elector is permitted to deposit his ballot, the presumption is in favor of the legality of the vote, and the burden is on the attacking party to show a lack of qualification in such elector.

2. **Same.**

Where it is sought to review the validity of an election on the ground of illegal voting, those seeking to overcome the result as declared by the election officers have the burden of proving, not only that illegal votes were cast in sufficient number to change the result, but by whom and for whom, or for what issue or question submitted, such votes were cast.

3. **Same—Bond Election—Validity.**

The mere fact that an inconsiderable number of persons disqualified to vote at a bond election were permitted to participate therein, is not sufficient to void such election, where it is possible to ascertain the true vote, and the proposition carried by the requisite number of votes.

Error from District Court, Garvin County; F. B. Swank, Judge.

Action by W. G. Kimberlin and others against the Board of Commissioners of Garvin County. Judgment for defendant, and plaintiffs bring error. Affirmed.

Marion Henderson, for plaintiffs in error.

Monroe Osborn, Co. Atty., and A. F. Pyeatt, for defendant in error.

McNEILL, J. This action was commenced by W. G. Kimberlin, Mrs. Ella Burch, M. C. Quinnell, R. L. Spradling, and W. G. Paris against the board of county commissioners of Garvin county, defendant in error, to enjoin the county commissioners from issuing and selling certain bonds and to declare illegal and void a certain election wherein Whitebead township had voted in favor of issuing certain road bonds.

The petition alleged that on the 22nd day of May, 1919, there was an election in White-bead township and the question submitted was, Should the township issue road bonds in the sum of $150,000? The petition alleged that at said election there were 327 votes for the bonds and 192 against said issue, and charged that a mistake had been made by the officials in making the return of one precinct and that certain illegal votes had been cast in other precincts sufficient to change the result of the election.

Upon the trial of the case, after the plaintiffs introduced their evidence and rested, the defendant demurred to said evidence, and the court sustained the demurrer and dismissed the cause of action. Plaintiffs filed a motion for new trial, which was overruled, and have now perfected their appeal to this court.

The assignment of error is that the court erred in sustaining a demurrer to the testimony introduced by the plaintiffs. The plaintiffs in error in their brief only question the election returns in three precincts, to wit: Paoli precinct, Garvin Springs precinct, and Beaty precinct. The returns made by the election officials disclose that there were 511 votes cast at said election, of which 157 were against the bond issue, and 354 for the bond issue.

The question presented concerning Paoli precinct is: The return of the officers was incorrect, in that the return disclosed there were 53 votes for the bond issue and 18 against the issue, and it is conceded that there was an error in making this return, that said return should have been certified as 18 for the bonds and 53 against the bonds. By allowing this correction, there would then be 319 votes for the bond issue and 192 against the bond issue.

The next irregularity complained of was in Garvin Springs voting precinct, wherein 103 votes were cast in favor of the bond issue and one against it. Plaintiffs in error contend that there were 75 illegal votes cast in this precinct. To support this contention plaintiffs in error produced Mr. Lewis, one of the officials and the registrar for that precinct, as a witness, who testified he was appointed precinct registrar a short time before the Fifty Million Dollar Road Bond Election in the state was held, said election being held on May 6, 1919. Mr. Lewis testified that he registered 28 persons, and produced his duplicate register book with the names of the 28 persons he registered. He then enumerated numerous persons who had voted. It appears that the ballots had been destroyed. A number of the parties who voted were not upon the register book kept by Mr. Lewis. This was the only evidence as to who were legal voters within that precinct. There was no evidence to disclose who was the registrar of said precinct prior to the time Mr. Lewis was appointed registrar, or that there were no other registration books in existence.

Chapter 24, Sess. Laws 1916, provides for the appointment of registrars within each precinct, and to hold that the parties who had registered at the time Mr. Lewis was registrar were the only persons registered, would be to hold that no other registrars had been appointed prior to the election held May 6, 1919, or that no one had registered in said precinct prior to April, 1919. Without any evidence that there was no registrar appointed prior to the time Mr. Lewis was appointed, or that the registration book of Mr. Lewis contained a list of all the registered voters, we should have to hold that no registrars had ever been appointed, or, if so, they had never complied with their duty prior to said time by registering the voters of that precinct.

This court, in the case of Dunagan v. Town of Red Rock, 58 Okla. 218, 158 Pac. 1170, in the body of the opinion stated as follows:

"When an elector is permitted to deposit his ballot, the presumption is in favor of the legality of the vote, and the burden is on the attacking party to show a lack of qualification in such elector. Snyder v. Blake, 35 Okla. 294, 129 Pac. 34; Ledbetter v. Kimsey, 38 Okla. 671, 134 Pac. 868; Storm v. Parman, 43 Okla. 495, 143 Pac. 38; Gumm v. Hubbard, 97 Mo. 311, 11 S. W. 61, 10 Am. St. Rep. 312; McCrary on Elections (4th Ed., sec. 466a)."

The burden of proving that the voters were not registered and were disqualified was upon the plaintiffs. The fact that the plaintiffs only offered evidence to disclose that they had not registered between the 1st of April, 1919, and the 22nd day of May, 1919, would be no evidence that they had not registered prior to said time. There were produced as witnesses, however, four of the parties who voted, who stated they were registered in other counties, or other precincts, but never had transferred their registration to this precinct; and we may concede for the sake of argument that they were not legal voters. This would leave, after deducting these four votes, 315 votes for the bond issue and a total of 507 legal votes cast.

It is next contended that in Beaty precinct 24 persons were registered within ten days prior to the date of the election, but plaintiffs in error only contend that 13 of that number voted. Conceding for the purpose of argument that 13 of said votes were illegal, it would still leave 302 votes cast for the bond issue at said election; then if we deduct the illegal votes from the total number of votes cast, we have 494 legal votes cast, or 290 would be 60 per cent. of the total legal votes cast.

Therefore, conceding that in the first precinct an error was made in making the return, and that in Garvin Springs township four illegal votes were cast, and 13 illegal votes cast in Beaty precinct, we would still have more than 60 per cent. of the votes cast for the bond issue. This would give to the plaintiffs a presumption that in Beaty precinct the 13 illegal votes were all cast in favor of the bond election, which is a presumption they are not entitled to, as stated

by this court in the case of Dunagan v. Town of Red Rock, supra, as follows:

"Where it is sought to review the validity of an election on the ground of illegal voting, those seeking to overcome the result as declared by the election officers have the burden of proving, not only that illegal votes were cast in sufficient number to change the result, but by whom and for whom, or for what issue or question submitted, such votes were cast."

This court, in the case of Shelton v. School Board Dist. No. 22 of City of Tulsa, 43 Okla. 239, 142 Pac. 1034, stated as follows:

"The mere fact that an inconsiderable number of persons disqualified to vote at a bond election were permitted to participate therein is not sufficient to avoid such election, where it is possible to ascertain the true vote, and the proposition carried by the requisite number of votes."

Even conceding that the votes above stated were illegal, still there were sufficient votes to carry the proposition submitted, and the court did not err in sustaining the demurrer to plaintiffs' evidence.

For the reasons stated, the judgment of the court is affirmed.

OWEN, C. J., and RAINEY, PITCHFORD, and HIGGINS, JJ., concur.