198 P.2d 1013

HARRISON et al. v. BOARD OF COUNTY COM'RS OF BANNOCK COUNTY et al.

No. 7480.

Supreme Court of Idaho.

Oct. 23, 1948.

B. A. McDevitt, of Pocatello, for appellants.

H. F. McQuade, Pros. Atty., C. M. Jeffery and Carl Christensen, all of Pocatello, for respondents.

HYATT, Justice.

Plaintiffs brought this suit against defendants, as the board of county commissioners of Bannock County, seeking a decree adjudging a special bond election held in Bannock County on November 5, 1946, and the proceedings preliminary thereto, to be void, and that defendants have no right to issue the bonds voted at such election.

The pertinent allegations of the complaint, in substance, are summarized and numbered for convenience as follows:

1. That the defendants, as a board, were petitioned by 5,106 persons to issue the bonds of the county in the sum of one million dollars for the construction of certain hospitals in Bannock County; that although said number of petitioners was in excess of 30% of the 15,001 persons voting for secretary of state at the preceding general election, nevertheless, 2,602 of said petitioners were not qualified electors and taxpayers of Bannock County.

2. That thereafter defendants ordered a bond election to be held November 5, 1946, but no proper notice was given, in that:

(a) the purpose for which said bonds should be issued was not specifically set forth in the commissioners' proceedings,

(b) no proper proceedings or order (for the election) were placed in their minutes so as to give notice of the election by the publication thereof;

(c) in no precinct were there posted two notices of election.

3. That prior to the election, defendants circulated misinformation as to the tax levy necessary to pay said bonds, which induced all to sign said petition and vote for said bonds.

4. That the election held pursuant to said order was void, in that:

(a) no notice of election was given for the reasons above set forth;

(b) no poll list of taxpayers was issued to the election judges and no means existed for checking persons qualified to vote.

(c) the judges were not able to and did not check the qualifications of any person voting.

(d) no affidavit of qualification was required or taken by the judges.

(e) more than two-thirds of those voting were not qualified electors and taxpayers.

(f) the defendants were in a position, but failed, to furnish such poll and check lists at the time of election.

(g) more than 60% of the votes in favor of the bonds were cast by unqualified persons.

This action was commenced March 3, 1948, more than a year after the election and canvass of the votes thereof, and no bond or security for costs as required by Section 33-1708, I.C.A. in election contests was filed.

Respondents demurred on general and special grounds and moved to dismiss for the above reasons. The court granted the motion, sustained the demurrer, and on April 30, 1948 entered judgment dismissing the action. Appellants did not ask leave to amend although a copy of said judgment as proposed was served on their counsel on April 29, 1948, one day prior to signing and entry.

Appellants submit two propositions: First, although an election contest, the statutory contest is not exclusive, and this action can be maintained under the authority of Ashley v. Richards, 32 Idaho 551, 185 P. 1076. Second, this action is not entirely one to contest an election, but to have all the proceedings up to and including the election declared void.

In Ashley v. Richards, supra, the court held that, while election contests were unknown to the common law and dependent upon statute alone (Toncray v. Budge, 14 Idaho 621, 93 P. 26), there was no statutory provision for contesting the result of a special school district bond election, and in the absence of any other available remedy to prevent the issuance of bonds in violation of Article 8, Section 3 of our constitution, a taxpayer could maintain a suit in equity

in order that the lack of authority to issue such bonds might be determined.

■ That case is not applicable here since a statutory procedure exists for the contest of this election and such remedy is exclusive as to matters that might be contested. Such is the prevailing rule in the United States. 18 Am.Jur. 362, Annotation Ann.Cas. 1913 E, page 982, State ex rel. Abercrombie v. District Court, 37 N.M. 407, 24 P.2d 265.

Our statutes, I.C.A., provide as follows:
"33-1701. Grounds of contest.—The election of any person to any public office, the location or relocation of a county seat, *or any proposition submitted to a vote of the people may be contested*:

"1. For malconduct, fraud, or corruption on the part of the judges of election in any precinct, township or ward, or of any board of canvassers, or any member of either board sufficient to change the result. * * *

"5. When illegal votes have been received or legal votes rejected at the polls sufficient to change the result.

"6. For any error in any board of canvassers in counting votes or in declaring the result of the election, if the error would change the result."

"33-1705. Jurisdiction—Removal of county seats and special questions.—The district courts of the respective counties shall hear and determine contests of election in regard to the removal of county seats, *and in re-gard to any other subject which may by law be submitted to the vote of the people of the county*, and the proceedings therein shall be conducted as near as may be hereinafter provided for contesting the election of county officers." (Emphasis added.)

Section 33-1708, I.C.A., provides that a contestant shall file the complaint for an election contest within twenty days after the votes are canvassed, and must also file a bond conditioned to pay all costs in case the election be confirmed, the complaint dismissed, or the prosecution fail.

Assuming, but not conceding or deciding, that poll and check lists and affidavits of qualification were required to be used by the election officials, their failure so to do would be a ground of contest under subdivision 1 of Sec. 33-1701, I.C.A., supra. Voting by unqualified persons would be a ground of contest under subdivision 5 of the same section.

So far as these grounds are concerned, appellants cannot maintain this action since such matters could have been brought up by direct contest of the election and the action to this extent partakes of a contest.

■ Taking up the alleged invalidity of the petition for election, the complaint is defective in that it does not allege that the petition had an insufficient number of resident taxpayer signers, but "that 2602 of the persons whose names or signatures appear on said petition were not *qualified electors and taxpayers* within Bannock County."

Sec. 30-3302, I.C.A., as amended by Chapter 116, 1945 Laws, only requires the petition to be signed by a certain number of resident taxpayers and is silent as to qualified electors. A person may be a taxpayer and yet not an elector. Under Section 30-3302, I.C.A., as amended by Chap. 116, 1945 Laws, the county commissioners had the authority to receive the petition, the implied right to determine its sufficiency, and the power to order the election. No other body or official is given command of these matters. It must be presumed, in the absence of any allegations in the complaint to the contrary, that the board found the petition sufficient, before ordering the election. If they erroneously found the petition sufficient, then their action was not void but voidable since they had the authority to act in regard to it.

■ Where a board of county commissioners acts on a matter in which it has authority, its action or order is final if no appeal is taken. Udy v. Cassia County, 65 Idaho 585 at page 592, 149 P.2d 999; Sizemore v. Board of County Commissioners, 36 Idaho 184, 210 P. 137; Johnston v. Savidge, 11 Idaho 204, 81 P. 616; School Dist. No. 25 v. Rice, 11 Idaho 99, 81 P. 155; Corker v. Elmore County Commissioners, 10 Idaho 255, 77 P. 633.

Section 30-1108, I.C.A. provides:

"Any time within twenty days after the first publication or posting of the statement, as required by section 30-725, *an appeal may be taken from any act, order or proceeding of the board,* by any person aggrieved thereby, or by any taxpayer of the county when any demand is allowed against the county *or when he deems any such act, order or proceeding illegal or prejudicial to the public interests; * * *."* (Emphasis added.).

It is to be noted, under the foregoing statute, that any act, order, or proceeding may be appealed from when the person aggrieved or the taxpayer deems any such act, order or proceeding *illegal.*

The order for election was based on the petition, and this order, together with all the proceedings of the Board preliminary thereto, could have been directly attacked by appeal under the foregoing statute.

■ Since the plaintiffs had a complete, plain, speedy, and adequate remedy by appeal, they cannot now invoke the aid of equity to attack the petition and order. Such is the settled rule in this state. Picotte v. Watt, 3 Idaho, Hasb., 447, 31 P. 805; Morgan v. County Commissioners of Kootenai County, 4 Idaho 418, 39 P. 1118; Bobbitt v. Blake, 25 Idaho 53, 136 P. 211; School District No. 25 v. Rice, 11 Idaho 99 at page 109, 81 P. 155; Rogers v. Hays, 3 Idaho, Hasb., 597, 32 P. 259.

■ Further, as a matter of public policy there must come a time after which the sufficiency of a petition for a bond election cannot, and should not, be questioned. Appellants, assuming no right of appeal, had ample time prior to the election and after the order therefor, to have brought suit to

test the validity of the petition and prevent the election. After the election was held they cannot be heard to question the sufficiency of the petition therefor. For a recognition of the principle, see McNamara v. Wayne, 67 Idaho 410, 182 P.2d 960.

In State v. Langlie, 5 N.D. 594, 67 N.W. 958, at page 961, 32 L.R.A. 723 the sufficiency of a petition for a county seat election was brought into question. The court said:

"We must assume, in cases of this kind, as in all other cases, that the board has done its duty, and has made a proper investigation. In our judgment, their conclusion as to the fact whether the petition has a sufficient number of names of voters upon it is final after the election has taken place."

See also Currie v. Paulson, 43 Minn. 411, 45 N.W. 854; Ellis v. Karl, 7 Neb. 381; Cary v. Simpson, 239 Ky. 381, 39 S.W.2d 668; 18 Am.Jur. 244; 20 C.J. 96; 29 C.J.S., Elections, § 70.

As indicated by these cases it is the vote at the election which determines the matter, not the petition; the main purpose of the latter is to save the expense of an election until there appears a reasonable probability of the matter carrying.

Plaintiffs next complain that defects in the commissioners' proceedings failed to give notice of the election. Section 30-1405, I.C.A. governs the giving of notice in a county bond election and the commissioners' proceedings cannot be taken or treated as the notice the law specifies.

Plaintiffs next allege that in no precinct were two notices of election posted as required by Section 30-1405 I.C.A. Such allegation does not exclude the fact that notice was given by publication and by posting of one notice. Nothing appears to show that the failure to post two notices in every precinct prevented the electors from giving full and free expression of their will at the election or that plaintiffs were prevented from voting. In Weisgerber v. Nez Perce County, 33 Idaho 670, 197 P. 562, 563, this court made an exhaustive examination of the authorities with reference to notices of election, and laid down the following rule:

"However, we are of the opinion that the correct rule, and the one supported by the great weight of authority, may be stated as follows: Statutory directions as to the time and manner of giving notice of elections are mandatory upon the officers charged with the duty of calling the election, and will be upheld strictly in a direct action instituted before an election; but after an election has been held, such statutory requirements are directory, unless it appears that the failure to give notice for the full time specified by the statute has prevented electors from giving a full and free expression of their will at the election, or unless the statute contains a further provision, the necessary effect of which is that failure to give notice for the statutory time will render the election void." (Here citing numerous authorities.) See also King v.

470

Ind. School Dist., 46 Idaho 800, 272 P. 507 and McLoughlin v. City of Prescott, 39 Ariz. 286, 6 P.2d 50.

On the question of whether the circulation of misinformation will invalidate an election, the rule is stated in Dillon on Municipal Corporations, 5th Edition, Section 213, Page 430, as follows:

"Inducements in the way of statements and representations made to influence a voter, although false and fraudulent, will not invalidate the election if it does not appear that by force and fraud the voter was compelled to vote in a way he did not wish to vote."

Misrepresentations by public officials and others will not vitiate an election (Anselmi v. City of Rock Springs, 53 Wyo. 223, 80 P.2d 419 at page 425, 116 A.L.R. 1250 and cases there cited; 43 Am.Jur. page 336), particularly if no action is taken until after the election has been held. Detroit United Railway Co. v. City of Detroit, 255 U.S. 171, 41 S.Ct. 285, 65 L.Ed. 570.

The same principles are applicable to misrepresentations in circulation of the petition.

The proposed judgment of dismissal was served upon the attorney for plaintiffs on April 29, 1948, and the judgment was signed, filed, entered, and recorded on April 30, 1948. No application was made by plaintiffs for leave to amend their complaint. It is not error to sustain a demurrer and dismiss a complaint without granting leave to amend, where as here, the record fails to disclose that an application for leave to amend was made either before or after the making of the order sustaining the demurrer. Sherman v. Watson, 58 Idaho 451, 74 P.2d 181; Chambers v. McCollum, 47 Idaho 74, at page 88, 272 P. 707.

There being no error on the part of the district court in granting the motion to dismiss and sustaining the demurrer, the judgment of dismissal based thereon is affirmed. Costs to respondents.

GIVENS, C. J., HOLDEN, J., and BAKER, D. J., concur.

MILLER, J., sat but did not participate in the decision.