242 P.2d 855

## HENLEY v. ELMORE COUNTY et al.

### No. 7832.

Supreme Court of Idaho.

March 7, 1952.

Rehearing Denied April 24, 1952.

Perce Hall, Mountain Home, Ariel L. Crowley, Boise, for appellants.

James, Shaw & James, Gooding, for respondent.

KEETON, Justice.

A special bond election was held June 8, 1950, in Elmore County, at which election there was submitted for determination the question of whether or not the commissioners should be authorized and empowered to issue negotiable coupon bonds in the sum of $85,000 to build a hospital as authorized by Sec. 31–3502, I.C.

The commissioners canvassed the returns and found there were 935 votes cast; that 639 of the persons voting voted "yes" and 306 voted "no", and declared the bond issue carried.

Plaintiff, a qualified taxpayer and voter, respondent here, brought this proceeding to have the proposition submitted adjudged defeated, and in his complaint alleged that 34 persons were permitted to vote at the election who were not taxpayers, and hence not qualified to vote. The complaint set out the names of the 34 persons so claimed disqualified and alleged 29 of said persons voted in favor of issuing the bonds, and further: "That if said 34 illegal voters had not been permitted to vote at said election, said proposition would not have received the required two-thirds vote. That by reason of the foregoing, said proposition failed to carry,  *  *  *."

Defendant, Elmore County, and its board of county commissioners and clerk filed an answer which denied that the persons named in the complaint as illegal voters were disqualified voters, and further denied that the election failed to carry.

The trial judge found that 18 of the persons named who voted "yes" on said proposition were not at the time of the election qualified to vote; that 17 of the said 18 did not appear on the 1949 real or personal property tax rolls as taxpayers of the county, and that one of the 18 named as voting in favor of the proposition was not a citizen. The court further concluded that the total number of legal votes cast at said election was 917 and that the number of

legal votes cast in favor of said proposition was 611; that the bond election failed to carry. The decree canceled and annulled the canvass made by the board of county commissioners.

By assignments of error, the appellants challenge the jurisdiction of the trial court to hear and determine the matter, contending that the action should have been by writ of prohibition and not what the appellants contend is an action for declaratory judgment.

Sec. 34–2001, I.C., authorizes a contest of an election that has been submitted to a vote of the people, Subdivision 5: "When illegal votes have been received or legal votes rejected at the polls sufficient to change the result." and Art. 5, Sec. 20 of the Constitution provides: "The district court shall have original jurisdiction in all cases, both at law and in equity, and such appellate jurisdiction as may be conferred by law." And Sec. 1–705, I.C., specifically confers original jurisdiction in the district court.

■ A taxpayer may contest the result of an election held to determine the question of incurring an indebtedness or as to the issuing of bonds, whether the result is in favor or against the proposition; and such taxpayer is sufficiently interested to maintain such an action to contest the official declaration of the result of such bond election. Harrison v. Board of County Commissioners, 68 Idaho 463, 198 P.2d 1013; Ashley v. Richard, 32 Idaho 551, 185

P. 1076; Whitten v. Chapman, 45 Idaho 653, 264 P. 871; 64 C.J.S., Municipal Corporations, § 2127, pp. 943–944, and § 2146, p. 961; 44 C.J., 1378, sec. 4553; Appalachian Elec. Power Co. v. Galax, 173 Va. 329, 4 S.E.2d 390; Vaughan v. Galax, 173 Va. 335, 4 S.E.2d 386; Gibson v. Supervisors of Trinity County, 80 Cal. 359, 22 P. 225.

■ Whether this proceeding be classified as an action at law or a suit in equity, or special proceedings, or by some other name, we deem unimportant. The election authorizing the bonds was sufficiently challenged.

■ Appellants contend that the word "people" as used in Sec. 34–2001, I.C., in the following sentence: "The election of any person to any public office, the location or relocation of a county seat, or any proposition submitted to a vote of the *people* may be contested:" (emphasis supplied) is distinguishable from the word "taxpayers" whose names appear on the tax rolls, and the contest authorized by the section applies only to instances where all the people of a county or district are permitted to vote and not where they are limited to a particular class, such as taxpayers, and for that reason the respondent cannot maintain this action.

We hold that the word "people" as used in this section (Sec. 34–2001, I.C.) means the persons qualified to vote at the election being held.

■ Appellants further contend that the term "taxpayers" as used in the amend-

ed complaint, as persons qualified to vote, did not include or specify the wife or husband of a taxpayer, which wife or husband would be entitled to vote under the provisions of Sec. 31–1905, I.C.

Sec. 31–3502, I.C., provides:

"* * * No person shall be qualified to vote at any election held under the provisions of this section unless he shall possess all the qualifications required of electors under the general laws of this state and is a taxpayer in such county.

"The board shall be governed in calling and holding such election and in the issuance and sale of such bonds, and in the providing for the payment of the principal and interest thereon by the provisions of sections 31–1901—31–1909, inclusive, and by the provisions of the 'Municipal Bond Law' of the state of Idaho, chapter 2 of title 57."

By reference the definition of a taxpayer qualified to vote is contained in Sec. 31–1905, I.C., hereinafter set forth.

We conclude that the word "taxpayer" as used in the complaint includes a husband or wife of a taxpayer. Hence, the complaint was sufficient. Further, if there were any error it was cured by the proof.

City of Pocatello v. Murray, 23 Idaho 447, 130 P. 383, and other cases cited by appellants as expressing a contrary view are not in point.

■ The complaint was verified by the attorney for the respondent, and the appellants challenge the verification as unauthorized. Assuming, but not deciding, that the verification was defective, it was waived by failure of the defendants to make a motion before the trial, challenging the verification. A defective verification is not jurisdictional and is waived by failure to make proper motion. 41 Am.Jur. 487, sec. 287; Pence v. Durbin, 1 Idaho 550.

■ Appellants contend that at the trial the court restricted the qualifications of persons qualified to vote at the election to those persons whose names appeared on the 1949 tax roll, and ignored the 1950 qualifications of certain persons who had voted at the election and whose names did not appear on the 1949 tax rolls, but did or would appear on the 1950 tax rolls.

The election challenged in the proceedings taken was conducted pursuant to the provisions of Sec. 31–1905 and 31–3502, I.C. Sec. 31–1905, I.C., after providing how the question to be determined is to be voted upon, specifies qualifications of those who may vote at such election:

"No person shall vote at any such bond election who is not:

"1. A qualified elector of the district; and,

"2. A bona fide resident thereof for more than thirty days last past; and,

"3.  a.  A taxpayer; or,

  b.  The wife or husband of a taxpayer."

A taxpayer as defined in said section is: "* * * a person whose name appears on the *tax rolls* of the county and is there as-

sessed with unexempt real or personal property owned and subject to taxation within the boundaries of the district." (In this case, Elmore County) (Emphasis supplied.)

What tax rolls did the legislature intend? What is meant by "a person whose name appears on the tax rolls"?

The commissioners, and those conducting the election evidently interpreted the section to mean the rolls of 1949 as such rolls were used in the notice of election and in determining who was qualified to vote. The trial judge simply followed the interpretation placed on the statute by those who conducted the election.

If the rolls intended by the legislature were the tax rolls of 1950, such rolls could not be used for an election held in June of that year for the reason that such rolls were not yet prepared or in existence when the election was held, and who would or would not appear on said rolls of 1950 had at the time of the election not been determined. Sec. 63-401, I.C.

Further, persons whose names appeared or would appear on the 1950 tax rolls with unexempt property subject to taxation were prohibited from voting by those who conducted the election for the reason the 1949 tax rolls were thought by the election officials to be exclusive. Hence if the validity of the bond election were to be determined by persons whose names would appear on the 1950 tax rolls when completed, other persons likewise appearing were disfranchised by the election officials.

Under the facts presented, we conclude that the court correctly limited the qualifications of voters to persons whose names appeared on the tax rolls then in existence; not to do so would permit a small part of the 1950 qualified voters to cast the deciding vote in determining the matter at issue. If some of such persons (1950 taxpayers) could have voted and have their votes count in the final tally, then all other persons similarly qualified should have been permitted to vote.

■ At the conclusion of the respondent's case, appellants offered testimony to prove that certain of the names listed in plaintiff's complaint as being disqualified voters, not called as witnesses by respondent, were not taxpayers appearing on the 1949 tax rolls and that each of them voted "no." Objection was made to this offer of proof on the ground that it was irrelevant, not within the issues, and was contrary to the appellants' pleading wherein they denied that illegal votes were cast, and that the legality of the election could not be predicated upon a defense of a showing of illegality on the part of the appellants. The court sustained the objection. This ruling is assigned as error.

Respondent had alleged in his complaint that 34 voters voted illegally, naming them, and that 29 of the 34 whom he alleged were not qualified to vote, had voted "yes." Only

18 of those named were called by the respondent as witnesses, and each of said disqualified voters testified that he voted "yes."

■ The burden of proof was on the respondent, as the contestant, to prove two things: Illegal votes, and that these illegal votes changed the result of the election. Jaycox v. Varnum, 39 Idaho 78, 226 P. 285.

While the appellants had denied that any of the 34 voters named in the complaint were illegal, the burden was not upon them to prove they were legal or illegal, but they would have a right to show that any of the voters challenged by respondent were not disqualified, or that by reason of the way they cast their vote, if disqualified, the same should be subtracted from the "yes" votes.

Sec. 34–2013, I.C. (covering procedure in election contests) provides: "The proceedings shall be simulated to those in an action, so far as practicable, but shall be under the control and direction of the court, which shall have all the powers necessary to the right hearing and determination of the matter; to compel the attendance of witnesses, swear them and direct their examination; to punish for contempt in its presence or by disobedience to its lawful mandate; to adjourn from day to day; to make any order concerning immediate costs, and to enforce its orders by attachment. It shall be governed by the rules of law and evidence applicable to the case." and

Sec. 34–2017, I.C., provides: "The court may require any person called as a witness, who voted at such election, to answer touching his qualifications as a voter; and if he was not a qualified voter in the county where he voted, then to answer for whom he voted; and if the witness answer such questions no part of his testimony on that trial shall be used against him in any criminal action."

Respondent, by his objections, was seeking to take advantage of the favorable consideration of only 18 of the voters which he had expressly challenged, and to prevent the other side and the court from proper consideration of all the voters which respondent had alleged were not qualified, and which, if allowed to testify would (according to the offered proof) have tended to nullify the respondent's showing.

■ While no affirmative defense was alleged, as was done in the case of Jaycox v. Varnum, supra, and the objection that the offered proof was not within the issues might have been properly sustained in matters of private litigation, the contest here and at issue was one in which the public had an interest. The rights being litigated were entirely of an impersonal nature. The question involved was the validity of the bonds sought to be issued.

A contested election, whatever the form of the proceeding may be, is in itself a proceeding in which the people—the constitu-

382

ency—are primarily and principally interested. It is not a suit for the adjudication and settlement of private rights, and the matters so at issue should not have been determined on technical grounds. McCrary on Elections, 4th Ed., page 333, para. 454; Moorhead v. Arnold, 73 Kan. 132, 84 P. 742; Horne v. Fish, 198 Ark. 79, 127 S.W. 2d 623; 29 C.J.S., Elections, § 300, p. 423.

The burden of proof being upon the respondent, and the public being primarily interested, respondent could not block the other side from showing the election in fact carried, and under the latter part of the appellants' answer, which denied the election had failed to carry, appellants had the right to show that sufficient of the votes which respondent contended were illegal had been so cast as not to invalidate the election.

The controversy should be decided on a determination of what are the true facts of the situation.

Hence, the objection to the offered proof as not being within the issues and irrelevant, was not well taken. Kimberlin v. Board of Commissioners, 78 Okl. 143, 189 P. 361; Rideout v. City of Los Angeles, 185 Cal. 426, 197 P. 74.

The case, therefore, is reversed and the cause remanded with instructions to hear all testimony offered or which may be offered by either side with regard to any claimed illegal votes and how each voter alleged to be disqualified voted, and make the necessary adjustment in determining whether or not there were sufficient legal votes cast to authorize the issuing of the bonds.

Costs to appellants.

GIVENS, C. J., and PORTER, TAYLOR and THOMAS, JJ., concur.

On Petition for Rehearing.

KEETON, Justice.

Subsequent to the filing of the opinion in the above entitled case, respondent filed a petition for rehearing, contending that by the decision appellants would be permitted, on the taking of further evidence, to submit testimony from persons whose qualifications to vote had not been challenged. Further testimony on the part of appellants, if any, should be limited to the persons challenged by the amended complaint.

The opinion states "appellants had the right to show that sufficient of the votes which respondent contended were illegal had been so cast as not to invalidate the election" thus limiting the offered testimony to the alleged disqualified voters set forth in the amended complaint.

▆▆▆ A re-examination of the transcript discloses that the following names, to-wit: Jess Ytarte ,found in the amended complaint as Jess Ytusate (presumably the same person), Myrrl Heller, shown in the complaint as Myrel Heller (presumably the same person), Joe Eguia, Ruth Tuller and Charles B. Tuller, were alleged in the amended complaint to be disqualified voters

who had voted "yes". The offered testimony of Edward D. Robertson and Geraldene Robertson, which was offered to prove they were disqualified voters and had voted "no" was properly sustained, for the reason that it was nowhere asserted in the amended complaint, nor by the answer, that said persons were in anywise disqualified, and until they were alleged by the pleadings to be disqualified the qualifications of persons voting, so to vote, would be presumed. Presumptions are in favor of the legality and regularity of a bond election proceeding, and the votes and ballots cast, and the votes cast at the election would be presumed to be legal until the contrary were shown. Where, as here, the answer does not affirmatively challenge any voters, further proof should be limited to those persons whom the amended complaint alleges were disqualified voters. If such persons so challenged voted "no" and were disqualified from voting, then the "no" votes of the persons challenged should be subtracted from the total "no" votes shown by the returns, to determine whether or not the bond election, in fact, carried.

Respondent should also be permitted to show, if he desires to do so, that other persons named and set forth in his amended complaint were disqualified and voted "yes". Petition for rehearing is denied.

GIVENS, C. J., and PORTER, TAYLOR and THOMAS, JJ., concur.