WILLIAM O. ELLIS AND OTHERS, APPELLANTS, v. PETER J. KARL AND OTHERS, APPELLEES.

1. **Judges of District Courts:** JURISDICTION OF AT CHAMBERS. The judges of the several district courts, as such, have no inherent authority at chambers whatever, but only such as the statutes give to them.

2. **When a Judge May Grant an Injunction Out of His Own District.** A district judge may grant a temporary order of injunction in an action out of his own district, but he can do so only when the office of judge in such district is vacant, or where it is shown that the judge thereof is absent or from some cause is unable to act.

3. **Re-Location of County Seat:** JURISDICTION OF COUNTY COMMISSIONERS IN. The act of 1875, for the re-location of county seats, gives to the board of county commissioners exclusive authority to receive petitions for that purpose, and also, incidentally, to determine whether the signatures to such petitions are genuine, and of persons authorized to sign them. And when, in the exercise of this jurisdiction, the commissioners receive a petition for the re-location of a county seat, and judge it to be

in all respects sufficient, and call an election accordingly, no objection being interposed either to the petition or to the action of the commissioners until after the election has been held and the result declared, it is too late to question the sufficiency of the petition; and an injunction to restrain the removal of the county offices to the new county seat, on the ground that such petition did not conform to the requirements of the law, will not be granted. .

4. ——: ——. The proper place to raise questions concerning the sufficiency of a petition for the re-location of a county seat is before the commissioners themselves; and if no objection be made there, the party complaining not being prevented from so doing, equity will not interfere to prevent a removal, conformably with the result of the election, because of defects in the petition.

5. **Election on Question of Re-Location:** NOTICE OF. In ordering an election on the question of the re-location of a county seat, thirty days notice is required. But even if the notice be for a less time than this, a court of equity will not, for this reason alone, declare the election void at the suit of a party who participated therein, especially where it is not shown that a different result would probably have been obtained if the full statutory notice had been given.

ACTION in equity. Heard in the district court for Saline county, upon demurrer to the petition, before WEAVER, J., who sustained the same and entered judgment dismissing the case. Plaintiffs appeal.

*M. H. Sessions, Lamb, Billingsley & Lambertson, James Laird,* and *E. E. Brown,* for appellants.

I. It is contended that the commissioners having found and decided that the petition was sufficient, that such finding is conclusive. This proposition is not sustained by the authorities. *Botton v. Jacks,* 6 Robert (N. Y.), 166. *Browne v. Mayor of N. Y.,* 3 Hun., 385. *Stone v. Miller,* 62 Barb., 430, 42. *Sheldon v. Newton,* 3 O. S., 499. Supposing they had found that a petition had been filed or signed, when in fact none had, would that be conclusive? We apprehend not. When the proceedings of inferior tribunals set forth the facts

necessary to give jurisdiction, they may be disproved and the proceedings avoided by parol evidence. *Clarke v. Holmes*, 1 Douglas, Mich., 390. *Denning v. Corwin*, 11 Wend., 648. *Borden v. Fitch*, 15 Johns., 121. *Harrington v. The People*, 6 Barb., 607. *People v. Cassell*, 5 Hill., 164. *Walker v. Mozeley*, 5 Denio, 102. *Cooper v. Sunderland*, 3 Iowa, 126.

II. There was no waiver of notice in this case. Neither could there be. There is an important distinction to be observed between general and special elections. The time, place, and manner of holding the former being fixed by law, the electors must take notice of them, and as to such elections the statutory requirements of giving notice by public proclamation may be and are regarded as directory only. But in the case of special elections, where no time is fixed by law for the holding of the same, and is to be determined by the officers calling the same, the statute becomes mandatory, and public notice must be given of the same for the length of time required by the statute. In the case of *The People, ex rel Darnell, v. Hamilton County*, 3 Neb., 244, it was held to be " an imperative requirement in an election for the removal of a county seat, that the notice thereof should in all respects conform to the law authorizing such elections." Neither is there an estoppel in the case. The election was irregular for want of notice. " Majorities go for nothing at an irregular election; they are not even regarded as majorities, for it is the right of orderly citizens to stay away from such elections, and if every voter votes it has no effect." *Commonwealth v. Baxter*, 35 Pa. St., 263. *State v. Albin*, 44 Mo., 346. *People, ex rel. v. Rosborough*, 14 Cal., 181. Dillon on Corporations, 1st Ed., § 136. *People v. Porter*, 6 Cal., 27. *People, ex rel. v. Weller*, 11 Cal., 49. *Wendel v. Durbin*, 26 Wis., 390-2.

In reply to the point first made by the defendants that "the plaintiffs have not shown such an interest in the matter in controversy as will enable them to maintain the action," we say the same is not well taken in principle, neither is it sustained by the weight of authority. Dill. on Incorporations, 1st Ed., Secs. 731, 732, 733, 734, 736. *Collins v. Ripley*, 8 Ia., 131. *Rice v. Smith*, 9 Ia., 578. *New London v. Brainard*, 22 Conn., 552. *Scofield v. School Dist.*, 27 Conn., 499. *Ferret v. Sharm*, 34 Conn., 105. *Mayer & Co. v. Porter*, 18 Md., 285, 301. *Mayer v. Groshan*, 30 Md., 436. *Mayer v. Gill*, 31 Md., 375, 392. *Merrill v. Plainfield*, 45 N. H., 126. *Douglas v. Mayer*, 18 Cal., 644. *Coms. of Clay Co. v. Markle*, 46 Ind., 97, 103. 14 Kan., 381. Id., 18. 4 Neb., 413. *Colburn v. Mayer*, &c., A. L. R., March No., 1878, p. 191. Also see notes 1 and 2 on page 172, of remedies and remedial rights, where there is a full collection of all the authorities upon the question.

*Hastings & McGintie*, and *Mason & Whedon*, for appellees.

The plaintiffs have not shown such an interest in the matter in controversy as will enable them to maintain the action. The plaintiff must have a vested right, either legal or equitable, which may be greatly, if not irreparably affected by the act sought to be restrained. *Doolittle v. Supervisors*, 18 N. Y., 155. *Roosevelt v. Draper*, 23 N. Y., 318. *The Corporation v. Mapes*, 6 Johns. Ch., 45. *Craft v. Jackson County*, 5 Kan., 518.

The statute providing for the re-location of county seats, laws of 1875, page 159, invested the board of county commissioners with authority to receive the petition of those who were desirous of re-locating the county seat, and to pass upon the sufficiency of the petition, and whether the requisite number of electors had signed the same, and if the plaintiffs were aggrieved by the de-

Ellis v. Karl.

cision of the board they must resort to some one of the methods pointed out by the statute to review the decision, and cannot attack it collaterally. Broom's Legal Maxims, 4th edition, 325. *State v. Snelson*, 16 Ind., 29. *Baker v. Supervisors*, 40 Ia., 226. *Clark v. Dayton*, 6 Neb., 192. *Brown v. Otoe Co.*, 6 Neb., 111. *Com. of Knox Co., Ind., v. Aspinwall*, 21 Harvard, 530. *Ryan v. Varga*, 37 Iowa, 78. *West v. Whittaker*, 37 Iowa, 598. 12 Wheaton, 19.

LAKE, J.

This is an appeal from the district court for Saline county. The action was brought in that court against the defendants, the county officers of that county, to enjoin them from removing their respective offices from Pleasant Hill, the former county seat, to Wilbur, the place to which it had been declared removed by a vote of the county.

The conclusion at which we have arrived makes it really unnecessary to notice but the single question raised by the demurrer of whether the petition states a cause of action; but, inasmuch as an important question of practice respecting the power of the several judges of the district courts to grant injunctions, in cases brought in each other's districts, is properly raised, we have thought it best not to overlook it.

Saline county, the one in which the action was brought, is in the *first* judicial district, and is presided over by the Hon. A. J. Weaver, judge. The record shows that when the petition was about to be filed it was presented to Judge Pound of the second district, who, without any showing of inability on the part of Judge Weaver to act, allowed a temporary injunction as prayed. The controling statute on this subject is Sec. 55, page 261, Gen. Statutes, which provides that: "Whenever a vacancy shall occur in the office of dis-

27

trict judge, in any district in this state, or whenever it shall appear by affidavit to the satisfaction of any district judge in the state that the judge of any other district is unable to act, on account of sickness, interest, or absence from the district, or from any other cause, the judge to whom application may be made, shall have power to make any order," etc., "which the judge of such district could make or do," etc.

Under the constitution, the judges of the district courts, as such, have no inherent judicial authority at chambers whatever.  Sec. 23, Art. VI, provides that: "The several judges of the courts of record shall have such jurisdiction at chambers as may be provided by law."  By Sec. 252 of the code of civil procedure, it is enacted that:  "The injunction may be granted at the time of commencing the action, or at any time afterwards, before judgment, by the supreme court or any judge thereof, the district court *or any judge thereof*," etc.  This is one of the provisions "*by law*," contemplated by the section of the constitution just quoted.

It is contended by plaintiffs' counsel that this section is quite comprehensive enough to authorize any district judge to grant temporary injunctions throughout the state, no matter whether the judge of the court in which the action is brought be absent from his district, or otherwise incapacitated to act or not.  But, even independently of section 55, from which we have quoted above, we do not think that the language here employed warrants this construction.  The words, "*the* district court, or any judge thereof," clearly refer alone to the particular court in which the action is brought, and to the judge having for the time being jurisdiction within that district. Ordinarily this would be the judge of that judicial district, and, but for section 55, it could be no other.  The jurisdiction, however, which this latter section confers, is conditional only, not general.  It can be

properly exercised in a district where the office of judge is vacant, or when it is shown that the judge of a district is absent, or from any other cause unable to act if applied to. But if the judge of one district assume to act in a cause pending in another, where no such disability or absence exists, such act would be unauthorized and void; and so we find the act of Judge Pound, in granting the temporary injunction in this case, to have been. The two sections of the statutes from which we quote are not in conflict with each other, and must be considered together, and given effect in the determination of this branch of the case. Judge Weaver was clearly right in holding that this preliminary injunction had been granted without jurisdiction.

But, does the petition state a good course of action? This is the principal question in the case. The substantial points made by the pleader, and now relied on, are two: *First.* That in ordering the first election the commissioners acted without jurisdiction. *Second.* That said election, as well as the succeeding ones, was void for the reason that notices thereof were not given for the length of time which the statute requires.

The alleged want of jurisdiction is based upon the fact that although the petition for re-location as presented to the board of commissioners contained the names of persons purporting to be electors " equal in numbers to three-fifths of all the votes cast in said county at the last general election," yet the fact was, " that a large number of the names attached to said petition were the names of fictitious persons, and forged names, and the names of non-residents," etc., so that, counting only the genuine legal signatures, there were considerably less than the requisite number to authorize the calling of an election.

Section one of the act of February 24, 1875, providing for the re-location of county seats, gives to county com-

missioners full authority to receive petitions for that purpose, and also, incidentally, to determine whether the signatures to such petitions are genuine, and of persons who are "resident electors of said county." Neither the courts, nor any other officer or person, have any original jurisdiction in the decision of these questions. And it appears that, in the exercise of the jurisdiction thus conferred, the commissioners received the petition for relocation, and adjudging it in all respects sufficient, made and entered of record this order: "Whereas on the twentieth day of August, 1877, was presented by Samuel Windrom to the board of county commissioners of Saline county a petition calling for a re-location of the county seat, which said petition was signed in manner required by law by citizens of said county in number more than three-fifths of the votes cast at the last general election." Thereupon, at the same time, they ordered in due form the calling of the first election on this question, to be held on the fourth of September, 1877.

It does not appear that either the genuineness or the sufficiency of the petition was questioned before the commissioners, but it is alleged that all of the defects complained of were fully known to them when they made the order for the election. And it is further alleged that the plaintiffs were wholly ignorant concerning them until more than twenty days had elapsed after the decision had been made, which seems to be thought a sufficient excuse for not moving earlier in this attack upon the action of the board:

We are of the opinion that under this statute the proper place to have raised these questions concerning the petition was before the commissioners themselves, and that having failed to make the objections there, and no sufficient reason for the failure being shown, the plaintiffs are in no situation to ask the aid of a court of equity; especially so, when they have rested apparently

content until three elections, in which they participated, and took the chances of a favorable issue, have been held, and the result finally declared. The fact that the plaintiffs "*did not know*" of the matters complained of in time to have availed themselves of their legal remedy is entitled to no weight, nor is it a sufficient reason for a resort to the extraordinary remedy here sought. If they " did not know," they were at least in a situation in which, by the exercise of common observation, they might have known what the petition contained. Ignorance of this sort, which, if not willful, is at least voluntary, is not a valid excuse for the failure to resort to the ordinary legal remedy, nor can it be made available to give them a standing in a court of equity. It is one of the most valuable maxims of the law, that: "*The acquiescence of a party who might take advantage of an error obviates it.*"

The point made upon the notices may be quickly disposed of. We are of the opinion that the statute requires thirty days notice to be given of such election. It is provided in the first section of the act in question that: " Notice of the time and the places of holding said election shall be given in the same manner * * * * as is provided by law relating to general election for county purposes." And by Sec. 3 of the general election law it is made the duty of the several county commissioners, " at least thirty days previous to any general election," to cause notice thereof to be given by three written or printed notices " posted up in each election precinct." Taking these two provisions of the law together we do not see how any other construction than the one contended for by the plaintiffs, and which we give, could be adopted without doing violence to the intention of the legislature, very plainly expressed.

But, notwithstanding the failure to give the full statutory notice, we do not think that the plaintiffs are in a

situation to complain for the want of it. The only purpose which the notice could serve was that the question to be voted upon might be brought to the attention of each·elector, and an opportunity afforded him to attend the election and express his opinion concerning it through the ballot box. Such being the purpose of the notice, it seems but just to require a party who bases his claim to equitable relief on the failure to give it, to show that for the want of it he has sustained the injury which he seeks to have redressed. The plaintiffs do not allege that they failed to take part in the election, and for want of such allegation it may be inferred that they did participate therein. In this particular, therefore, the additional notice could have been of no use. But, perhaps we ought not to omit to mention that the petition does contain general averments to.the effect that a large number of voters in the county failed to ˙receive any notice whatever of the election, and that even those who did receive it did not have time to inform themselves upon the question to be voted on, by reason of which " the election was carried in favor of re-locating the county seat." But in all this the petition is merely conjectural and argumentative. There is not a single fact stated from which the court could say that any different result would have been obtained by giving the full statutory notice. Not a single person is named who was kept away from the polls, nor is it shown that even one additional vote against the proposed re-location could have been secured by a longer notice. Besides, we are of the opinion that, by participating in these elections, the plaintiffs, in equity, are estopped from now questioning their entire regularity so far as the notice is concerned. It would certainly be most inequitable, and productive of much mischief, to permit them to do so in the manner here attempted.

JUDGMENT AFFIRMED.