## Bass v. Katterjohn, Mayor, et al.

(Decided March 24, 1922.)

### Appeal from McCracken Circuit Court.

1. Elections—Contest—Equity.—Courts of equity have no inherent power to try contested elections, notwithstanding fraud and corruption may be charged against the successful party.
2. Elections—Contest.—But for statutes on the subject providing a mode of procedure by which one claiming to have been elected to an office and to whom a certificate of election has been regularly issued, no contest could be maintained against him in any court, even though it be alleged and proven that the successful candidate obtained his election by fraud.
3. Elections—Contest—Equity.—Since no power inheres in a court of equity to try and determine election contests arising over a proposition to vote improvement bonds for cities, and the General Assembly has not conferred such power upon courts, as it has in other elections, no such right exists, and the attempt of the lower court to hear and determine such contest was outside its jurisdiction and its judgment upholding the bonds is void.

MOCQUOT & BERRY for appellant.

ROSCOE REED for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

A very novel question is presented by this appeal from a decree of the McCracken circuit court denying the planitiff below, and appellant here, an injunction restraining Mayor Katterjohn and the city commissioners of Paducah from issuing and marketing city bonds of the par value of sixty thousand dollars. It is conceded that the call for the election upon the bond issue was properly and regularly made by the city commissioners, and that the election was duly and fully advertised as

required by law, and held in the regularly prescribed mode, but it is insisted that as it was necessary to the carrying of said bond issue that at least two-thirds of the voters voting at said election should vote in favor of said bond issue, and as only 2,452 people voted in favor of said bond issue and 1,315 voted against it, the issue failed to carry and no bonds can be legally issued in consequence thereof. Constitution of Kentucky, section 157. For appellees it is said that while the election officers, who were appointed to and did hold the election in the several precincts of Paducah, certified to the proper authorities that only 2,452 voters voted in favor of the bond issue and 1,315 voted against it, this return of the results of the election was incorrect and happened through mistake of said officers, and an action in equity was commenced in the McCracken circuit court some time after the election in which W. J. Gilbert, a citizen and taxpayer, who voted for the bond issue, was plaintiff, and T. J. Quarles, a citizen and taxpayer, who it is alleged voted against said bond issue, and Mayor Katterjohn and the city commissioners were made defendants for the purpose of contesting the said election upon the bond issue, and having the ballot boxes, containing the ballots and the returns of the thirty precincts of the said city, opened and all the ballots cast at said election recounted; the certificate of the county board of election commissioners theretofore issued, showing that the bond issue had been lost at the said election, declared null and void, and said board of election commissioners ordered and directed after the recount of the said ballots to issue its certificate to the said city of Paducah showing that said question was adopted at said election in all respects as required by law, and that upon said hearing of the equitable cause in the McCracken circuit court, and after the ballots had been recounted by a special commissioner appointed by the court for that purpose, and said commissioner had filed his report showing that there had been cast at said election 2,575 votes in favor of said bond issue and only 1,233 against said bond issue, the court adjudged that there were cast 2,575 votes in favor of said bond issue and 1,233 against it, and that the question, an ordinance involved in said election, was duly adopted by a two-thirds majority of the qualified voters of the city of Paducah voting upon said question. It was further ordered that said judgment be certified by the clerk of the McCracken circuit court to the mayor and board of commissioners

of the city of Paducah, and this was done. Following the entry of this judgment and its certification as aforesaid, the mayor and board of commissioners of the city passed the necessary ordinances for the issuance and sale of the bonds voted upon at the said election, and were offering to and about to sell the same for the purposes for which the bonds were voted, when this action was commenced by appellant Bass, as plaintiff, against Mayor Katter-john and the commissioners of the city of Paducah, and each of them, to enjoin and restrain them from issuing and selling said sixty thousand dollars of bonds, or any part thereof, on the ground that the said bond issue was lost at said election, for it did not receive a two-thirds majority of votes of the voters voting therein, it being averred that the said judgment of the McCracken circuit court in the case of Gilbert v. Quarles was void and of no effect, because the McCracken circuit court had no jurisdiction to hear and determine a contest of an election on a proposition to vote improvement bonds such as these or any other such question. With the petition was filed as an exhibit a copy of all ordinances passed by the council calling the election on the bond issue, as well as those looking to the issuance and sale of said bonds; the election returns showing the vote in each precinct as certified to the election commissioners, and the order entered by the board of commissioners of the city declaring the election lost and the proposition to issue and sell sixty thousand dollars of bonds rejected; and a complete copy of the record in the case of Gilbert v. Quarles, including the petition, summons, return thereon, answer of Quarles and the city of Paducah and its several officers, who were defendants in said action, the report of the commissioner appointed to recount the ballots—there was no evidence heard—and the judgment holding that 2,575 voters had voted in favor of said bond issue and only 1,233 had voted against the issue of bonds, and that said question of issuing bonds had been adopted by a vote of more than two-thirds majority.

To the petition in the instant case was interposed a general demurrer which, after hearing, the court sustained, and the action was dismissed in consequence of the failure of the plaintiff to further plead. From this last order this appeal was prosecuted.

Conceding that all the steps taken calling and holding the election upon the question of whether the city should issue and sell bonds in the sum of sixty thousand

dollars for improvement of its hospital, were regular in all respects, the sole question for our determination is whether the judgment of the McCracken circuit court in the contest case of Gilbert v. Quarles to which we have referred, and which judgment undertook to correct, as it is averred, the returns of the said bond issue election, and to adjudge that the said bond issue was adopted by more than a two-thirds majority, and from which judgment there was no appeal, was a valid and enforceable judgment as contended by appellees, or a mere nullity as asserted by appellant Bass. This depends upon whether such an election can be contested, and if it can be contested whether the methods and procedure adopted by the plaintiff in said action were sufficient to confer jurisdiction of the subject matter and bring the necessary parties before the court for the determination of the question involved. The general rule seems to be that courts of equity have no inherent power to try contested elections, notwithstanding fraud and corruption may be charged against the successful party. (20 Corpus Juris, page 216; 9 R. C. L. 1152.) Our modern methods of contesting elections were entirely unknown to the common law. But for statutes on the subject providing the mode of procedure by which one claiming to have been elected to an office and to whom a certificate of election has been regularly issued, no contest could be maintained against him in any court even though it be alleged and proven that the successful candidate obtained his election by fraud. We have held in numerous cases, including Trustees Common School District No. 88 v. B. E. Garvey, etc., 80 Ky. 164; Clarke, etc. v. Rogers, etc., 81 Ky. 44, and Stine v. Berry, 96 Ky. 65, that where there is no method provided by statute for contesting an election the result certified by those appointed to hold the election and certify the result is final and conclusive— McCreary on Elections, section 417—which is but the converse of the principle that no power inheres in courts of equity to try and determine election contest cases.

While there are some cases in foreign jurisdictions, notably California, which hold that courts of equity have jurisdiction independent of statute to hear and determine contested election cases involving the adoption of bond issues, we have established and consistently maintained a contrary rule. Some of the cases from foreign jurisdictions are: George C. Beason, et al. v. Jesse M. Shaw, 18 L. R. A. (N. S.) 566; Henry Truelson v. City of Duluth,

et al., 60 Minn. 132; Hanson, et al. v. Village of Adrian, et al., 148 N. W. 276; State of South Carolina Ex Rel. Charles W. Birchmore v. State Board of Canvassers, et al., 14 L. R. A. (N. S.) 850, and Clarke v. Jack, 60 Ala. 271. The strongest and most enlightening adverse case to which our attention has been called is that of Gibson v. Trinity County (California), reported in 22 Pacific, page 225. We cannot adopt the reasoning of the California court for we have established a different rule, viz.: that no power inheres in courts of equity to hear and determine contested election cases, and no such case can be heard and determined by a court in this jurisdiction in the absence of specific statutory provisions enabling it to do so. In the case of Wilson v. Whitley City, Ky., reported in 159 Ky. 70, involving the regularity of an election held for the purpose of locating the county seat of McCreary county in 1913, Wilson and others, citizens and taxpayers of McCreary county, who favored the location of the county seat at Pine Knott, brought an action in equity for the purpose of contesting the election. A demurrer was sustained to the petition and the action dismissed on the ground that the court was without jurisdiction to try the contest. Upon appeal here we said: "This is an election contest pure and simple. No other question or rights are involved. It is the established doctrine in this state that courts of equity have no inherent power to try contested elections, but can only exercise such power where it has been conferred by express enactment or necessary implication therefrom. Pflanz v. Foster, 155 Ky. 15; Harrison v. Stroud, 110 S. W. 828; Patterson, &c. v. Knapp, &c., 125 Ky. 474. In many other jurisdictions the same rule is followed. McCreary on Elections, 3rd ed., sec. 351; 15 Cyc. 394; 10 Am. & Eng. Ency. 816; Market v. Sumpter County, 53 Southern 613.

"The act in question does not provide for a contest. . . . Inasmuch as the general law provided a mode of contesting elections held under it, it was contended that the county seat removal election might be contested under those provisions. It was held, however, that as the general election law regulating contested elections was confined solely to the election of persons to office it was not applicable in that case, and consequently no statutory authority existed for the contest of such election. For the same reason we conclude that the clause in question is not broad enough to make the contest provisions of

the general election law, which relate solely to the election of officers, applicable to an election arising under the act in question." To the same effect are the cases of Doss v. Howard, et al., 180 Ky. 413, and Wilson v. Tye, 122 Ky. 508.

In the case of Patterson, &c. v. Knapp, &c., reported in 125 Ky. 474, the election was contested upon the ground that the officers of election refused to permit certain qualified voters to vote who offered to vote, and who, had they been permitted to vote, would have voted against the tax, and, further, that the officers permitted certain other persons to vote, who, it was alleged, were not qualified voters of the town, and who voted in favor of the tax. In discussing the matter we held that the alleged irregularities were sufficient to have changed the result of the election had they been corrected. Notwithstandng this we said that: "Courts of equity have not inherently, and had not at common law, the jurisdiction to try contested election cases. Nor have any other courts for that matter. Such jurisdiction exists only when it is conferred by statute. However desirable it may be that some tribunal should be provided in which a contest might be instituted and tried, be the matter involved either the selection of public officials or the imposition of a tax upon the people by vote of the electors, that is a question that addresses itself to the discretion of the legislature," and we affirmed the judgment, dismissing the action, which was intended to contest the election on the proposition of voting the tax. The legislature has power to and, in justice, it seems it should empower courts to hear and determine contests of elections on bond issues and other propositions submitted to a vote of the people, for it is easy to imagine a case where great injustice might be done through the fraud or misconduct of the officers holding such an election or the persons voting at such election. But since no power inheres in a court of equity to try and determine such contest cases, and the General Assembly has not seen fit to confer upon courts in such cases as it has in other elections the right to hear and determine such contests, no such right exists, and the attempt of the McCracken circuit court to hear and determine the contest in the case of Gilbert v. Quarles, *supra,* was entirely outside of and beyond the jurisdiction of that court, and the court having no jurisdiction of the subject of the action the judgment entered by it was a nullity, absolutely void. A void judgment may be at-

tacked either by appeal or in a collateral proceeding as
was done in this case, for it has no force whatever. How-
ever much we may regret the failure of the General As-
sembly to provide a means for contesting elections of the
kind under consideration, we must hold, as we have in a
long line of cases, that courts of equity have no jurisdic-
tion to hear and determine a contest in the way and
manner attempted in the McCracken circuit court in the
case of Gilbert v. Quarles. For these reasons the judg-
ment must be and is reversed, with directions to overrule
the demurrer to the petition of appellant Bass, and to
grant the relief prayed therein

Judgment reversed.

Whole court sitting