## Cary v. Simpson, County Judge, et al.

(Decided June 2, 1931.)

TANNER OTTLEY for appellant.

C. R. HICKS for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS—
Affirming.

At the regular November election, in 1929, there was
a special election held in Cary precinct, in Cumberland
county, under the provisions of chapter 122 of Carroll's
Kentucky Statutes, Edition of 1930, relating to stock
running at large, and which was duly called pursuant
to the provisions of that chapter, being section 4645m-1
to and including section 4645m-8. The result of the elec-
tion as certified by the county board of election commis-
sioners was that 65 votes were cast against the running
at large of stock in the precinct and 64 votes were cast
in favor of it. After the certificate had been recorded
in the county court, as provided in the section 4645m-6 of
the Statutes, supra, the appellant, R. G. Cary, refused
to comply with the mandate of the election, and inten-
tionally and purposely permitted his stock to run at
large in violation of the voted restriction. The appellee
and defendant below, B. L. Simpson, was the county
judge of the county, and the other defendant and appel-
lee, George W. Cary, was a citizen of the county and he
made affidavit before his codefendant (the county judge)
charging appellant with violating the law after it had
been put in force by the election. But before the day
set for his trial he filed this petition in equity in the
Cumberland circuit court against defendants in which
he averred that the election was void and of no effect for
three reasons, which were and are: (1) That no valid
petition as is prescribed in section 4645m-1 was ever filed
in the county court as a basis for the order calling the
election; (2) that the question that was printed on the
ballot to be answered by the voters did not conform to
the one prescribed and set out in section 4645m-4 of the
Statutes, and that the departure therefrom was so sub-
stantial as to nullify the election, and (3) that the elec-
tion officers in Cary precinct wrongfully subscribed their
names to the certificate of the result of the election on
that question after they had returned the poll books to
the county court clerk on the day of the election but with-
out having subscribed their names to the certificate which
they had completely made out, but their failure to sign
it was through over sight.

He obtained a temporary restraining order from
the clerk of the court enjoining defendants from prose-
cuting him under the warrant upon which he was

arrested, because, as he contended, the election was void for the reasons stated in his petition, and he sought upon final trial a permanent injunction to that effect. The answer was a denial of all the material averments of the petition, and the testimony of only two witnesses was heard and the case was submitted to the court, followed by a judgment dismissing the petition, to reverse which plaintiff prosecutes this appeal. Waiving all questions of proper parties defendant, and conceding (but without deciding) the propriety of the remedy employed by plaintiff to obtain the relief he sought if the facts authorized it, we will proceed at once to consider the grounds relied on in the order named.

1. Ground (1) was sought to be established by the parol testimony of the only two witnesses introduced at the trial, i. e., the county court clerk and the then county attorney. By them plaintiff attempted to prove that the original petition filed in the county court asking for the election and signed by the requisite number of voters in the precinct was written in longhand, and when delivered to the county court clerk to be filed he made some objections or criticisms as to its conformity with the statute and submitted the matter to the then county attorney who concluded that, perhaps, the county court clerk was right in his objections and criticisms, and to rectify the supposed irregularities the county attorney prepared a typewritten petition (but inappropriately designated by the witness as "caption"), and then clipped the signatures off of the original petition and pasted them on the typewritten one prepared by him, and which was done, as we gather from the testimony, in the presence of a number of voters in the precinct, and perhaps all of the subscribers to the petition, but whether so or not we are unable to say from the record. As so altered it was filed with the clerk, and in due time the order for the election was made by the county judge, and it was duly spread upon the order books of the court and the election advertised as the law directs.

We have no hesitancy in concluding that, if the typewritten petition, as so substituted for the original one in longhand, was materially and substantially different from the one that the petitioners subscribed, it would render the petition invalid and the same vice would necessarily inhere in the order calling the election, as well as serve to nullify the election itself. In that case the filed petition would speak a different language from that

spoken by the petitioners when they subscribed their names to the original one, and it might be, as is here contended in brief only, that the petition as so altered would call for an election covering a different territory from that described in the original petition, and which, if true, would render invalid the entire proceeding. But before any such fact may be judicially determined to so operate, the proof of the fact must be of the character, and presented at such a time, as that the court called upon to make such a determination would be authorized to accept it for that purpose. In other words, if the subject-matter of investigation had advanced to such a stage and had passed through original judicial investigation, and had therein been determined contrary to the contention made in the later collateral application in equity for nullification, then the great majority of courts have declared, upon sound and logical reasoning, that the determination of the court having jurisdiction to find the essential facts as a prerequisite to the calling of an election cannot be so collaterally impeached by extrinsic testimony and which is the character of impeachment sought in this case.

In the text in 20 C. J. 96, sec. 79, it is said inter alia: "After the sufficiency of the petition has been passed upon by the proper authority and the order has been made, the decision is not open to collateral attack, especially where an election has been held under the order and in other respects according to law." The cases of West v. Whitaker, 37 Iowa, 598; Ryan v. Varga, 37 Iowa 78, and State v. Mackin, 51 Mo. App. 299, are cited in support of that text, and our examination of them discloses that they do so. In 9 R. C. L. page 996, sec. 18, the text accurately and carefully compiles the law upon this subject. After pointing out that in some cases, and under some circumstances, the determination of the sufficiency of the petition asking for the calling of the election by the officer, whose duty it is to pass upon its sufficiency and to call the election may be inquired into in a proceeding of this nature (as was true in the case of Gill v. Board of Commissioners, a North Carolina case reported in 160 N. C. 176, 76 S. E. 203, and 43 L. R. A. [N. S.] 293), the text then says:

"However, a contrary rule exists and is supported by excellent authority, upon the reasoning that it must be assumed in cases of this kind as in all others that the officials to whom the petition was

submitted did their duty, and their conclusion as to whether the petition was sufficient is final after an election has been held. As a strong inducing reason to this conclusion, it is pointed out that it is the vote of the electors at the election and not the signatures to the petition which determins the effect of the election.''

The case of State v. Langlie, 5 N. D. 594, 67 N. W. 958, 32 L. R. A. 723, is cited in support of that text and in that opinion, which supports it, there is cited by the writer of it in further support of the same principle the cases of Currie v. Paulson, 43 Minn. 411, 45 N. W. 854; Ellis v. Karl, 7 Neb. 381; Bennett v. Hetherington, 41 Iowa 142; Baker v. Louisa County Supervisors, 40 Iowa 226; volume 2, High on Injunctions, section 1257 and 1258, as well as other cases from the North Dakota Supreme Court. It would be of no substantial benefit for us to incorporate the reasons prompting those courts in arriving at that conclusion, since they may be obtained by consulting those opinions. It is sufficient to say that the result of the election is the fixing of a status in the community over which the election operates, and that under the provisions of the law authorizing the election the judicial part of the machinery employed therefor has determined the existence of all latent facts that the statute requires to be manifested to it, and to permit, in a collateral proceeding, a reinvestigation of such latent facts (those dehors the face of the record) would result in such disturbing and confusing conditons as to outweigh the benefits sought to be obtained thereby, and would, in a measure at least, violate the universal rule that judgments of tribunals of orignal, and in this case exclusive, jurisdiction, may not be collaterally impeached by parol testimony when the record on its face is in conformity with the prescribed practice, and the latter point was expressly commented upon by Judge Mitchell in the Currie case supra.

A different condition would be presented if there appeared upon the face of the record and papers embodying the steps to be taken for the calling of the election a nonconformity with the statutory requirements, an illustration of which may be drawn from the facts of this case. The statute (section 4645m-1) requires not less than 25 signatures to the petition, and the petition itself must state the territory within which the election is to be

held. If, therefore, there were a less number of petitioners, or if there was no territory included in the petition in which the requested election is to be held, nor any reference to the recorded name it bears, so that it could not be ascertained from the petition the territory wherein the election is to be held, then the officer whose duty it is to determine such prerequisite facts to the ordering of the election would clearly be without jurisdiction or authority to do so, for the manifest reason that there should be presented to him at least a prima facie showing before he could act in the premises.

Moreover, the Gill case, supra, which recognized the right of the court that was applied to for the injunction to investigate and determine such preliminary facts before ordering of the election, held that under the practice of North Carolina, whose court rendered that opinion, such an attack was a direct, and not a collateral, one. We conclude that the sounder and better reason is that in a collateral attack of such an election the court in which it is made cannot investigate or inquire into latent defects in prior steps to the calling of the election, since the judgment of the officer calling it (especially where he is a judicial one and acts judicially) is conclusive after the election, and its result has become operative. But not so where the invalidating facts appear upon the face of the record, or required steps, as a prequisite for calling the election, since in that case there would be no prima facie showing made so as to enable the officer whose duty it was to call it to make an investigation of other necessary though latent facts, and the call for the election under such circumstances, as well as the election itself, would be void and subject to collateral attack in a proceeding of this nature.

The rule of the cited cases and texts, supra, and the one that we have herein adopted, denying the right of one to collaterally nullify an election of this character, because of latent defects and irregularites in the proceeding before the officer whose duty it was to call the election, is not only ''supported by excellent authority,'' but it is in conformity with the general principle that officials are presumed to have discharged their duty, and is also in conformity with another rule that judgments and judicial or quasi judicial findings will conclusively be presumed to be correct in cases and under circumstances of the nature herein presented; and which is true,

although there is no provided remedy for the contest of such an election. If however, there was such a remedy, it would be the exclusive one, as was held by us in the case of Puckett v. Snider, 110 Ky. 261, 61 S. W. 277, 22 Ky. Law Rep. 1718, involving a similar election with an analogous procedure for its calling. At the time the election now under consideration was held, section 4645m-6 of our present Statutes had been enacted (see chapter 176, page 583, Session Acts 1928). The contest therein provided for is an exact re-enactment of a prior section creating the same remedy, with identical procedure, and which prior section we declared unconstitutional in the case of Gabbard v. Roberts, 220 Ky. 480, 295 S. W. 438, and from which it necessarily follows that the identical contest remedy contained in the present section supra is likewise unconstitutional. So that, at the time this election was held, there existed no enacted remedy whereby it might be contested, and the 1930 session of the Legislature seems to have recognized that fact and attempted to remedy the situation by enacting chapter 52, page 167 of the Session Acts for that year.

Our holding herein does not deprive an objector to the election of all remedy. He can appear before the officer to whom the petiton for the election is addressed and manifest his objections to the calling of the election for any legitimate reason prevailing at that time. After the calling of the election and at any time between then and the spreading of the results thereof on the records of the county court, the courts are open to him, and wherein he may file his appropriate action against the proper parties, and if he manifests sufficient facts he may procure an injunction preventing subsequent steps from being taken, or even prevent, in that way, the holding of the election at all, provided, of course, he presented as a basis therefor facts authorizing such relief. In this case, and usually in all such cases, the election is required to be advertised, and the community to be affected becomes thoroughly informed of the situation. The period intervening between the calling of the election and the day on which it is held is of sufficient length to enable any one to discover the character of latent defects herein relied on, and if one opposed to the election does so, or if he negligently fails to do so and permits the election to be held and suffers all subsequent steps to be thereafter taken to put it into operation, he

should not be allowed in a subsequent collateral attack to rely upon such defects that were known to him before the election, or that he could have known by the exercise of even the slightest diligence. We, therefore, conclude that this ground is without merit, even if it should be conceded that the petition was materially changed or altered in the manner attempted to be proven by the only two witnesses who testified in the case.

However, we do not find such to be the fact. Those witnesses testified to only their "impressions" as to what the original petition contained and as to the difference between it and the typewritten substituted one. Neither of them anywhere in his testimony pointed out any material alteration or any material fact contained in the one that was not also contained in the other, and in the absence of such proof we are not prepared to say that the mere substitution of a typewritten petition for one written in script would have the effect of destroying the petition altogether and rendering it of no legal effect. The county judge at the time he made the order calling the election had before him the typewritten petition with the requisite number of signatures attached thereto, and he necessarily found that it was a legal and valid petition. As we have seen, there is no testimony in the record to show that he was in error in that respect. Therefore, if the rule were otherwise, then, as hereinbefore announced, the result would be the same, and for this additional reason ground (1) is unavailable.

2. It is argued in support of ground (2) that the statute (section 4645m-4) prescribes that the question to be submitted to the voters is: "Are you in favor of making it unlawful for cattle . . . to run at large on the public highways and unenclosed lands of the ............... voting precinct," etc.? Whereas, the question printed on the ballots that were voted in the election here involved was: "Are you in favor of cattle or any species thereof being permitted to run at large in said Cary voting precinct?" The two questions are substantially the same, the only difference being that the one requires a different answer by the voter to put the law into effect than is required by the other. But the question as printed on the ballot is couched in such language as to be free from doubt, difficulty, or ambiguity, and the voter could in no wise be misled thereby into voting contrary to his sentiments. Clearly, it was not intended by the Legis-

lature that the sample question incorporated in the statute should be literally adopted, but only that a substantial compliance therewith was required, and if that be done in such a manner, and by the employment of such language, as not to deceive the voter, then the departure would not be fatal to the election.

3. The argument in support of ground (3) is, as is alleged in the petiton (but upon which no proof was heard or offered, although the averment was denied), that the election officers of Cary precinct made out the certificate of the result of the special election stating therein the number of votes cast on each side of the propositon, but by oversight they neglected to subscribe their names to it and delivered the election paraphernalia, including the ballots and ballot box, to the county court clerk with the unsigned certificate made out by them. When their attention was later called to such omission they voluntarily came to the courthouse and subscribed that certificate before the county commissioners canvassed that election, and it is insisted that they had no right to do so; but to that contention we cannot subscribe. On the contrary, we have invariably held that, where election officers refused to certify the result of the election at their precinct, they could be compelled to do so. One case in which it was so held is that of Riddell v. Grinstead, 156 Ky. 319, 160 S. W. 1069. That being true, it follows that they may voluntarily do that which they may be compelled to do. This ground, therefore, is also without merit.

For the reasons stated, the judgment is affirmed.

Judge RICHARDSON not sitting.