## Hessler v. Garner, County Judge, et al.

(Decided Dec. 8, 1936.)

508

BLAKELY & MURPHY and S. H. MONARCH for appellant.
WALLS & KINCHELOE for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming.

On September 19, 1936, a local option election was held under the provisions of chapter 1, Acts of the General Assembly of Kentucky 1936, to determine whether the local option law should be adopted in that county. A large majority of the votes cast at such election were in favor of the adoption of such law.

On September 23, 1936, J. T. Hessler instituted this action in equity against the county judge, the county clerk, the sheriff and members of the election commission of Breckinridge county. He alleged that he was a citizen, resident, legal voter and taxpayer of Breckinridge county in which he was engaged in the business of selling spirituous, vinous, and malt liquors under the

provisions of the Kentucky Alcohol Act. After the foregoing and other formal allegations, the purpose of the action is stated thus:

> "The purpose of this proceeding is to enjoin the certification of the local option election held under the provisions of chapter 1, Acts of the General Assembly of the Commonwealth of Kentucky in 1936."

And following this, it is alleged that plaintiff has a large sum of money invested in his business in the county, and if the election is legal and was legally held, it would destroy his business and his investment therein. After setting out in substance the provisions of the act relating to the petitions calling for such election as provided in section 2 thereof, it is alleged that "pursuant to the provisions of this section petitions signed by nineteen hundred forty eight (1948) persons, was lodged and filed in the clerk's office of Breckinridge county on July 1936, asking that the sense of legal voters be taken on the proposition as to whether or not spirituous, vinous and malt liquors should be sold, bartered or loaned in Breckinridge county." The validity of the election was then attacked on numerous grounds including those to which we shall presently refer. He prayed that the defendants be enjoined and restrained from certifying the result of the election or making any order putting the local option law into effect or proceeding in any civil or criminal way against him by reason of the result of the election; that the election be declared null and void and that the petitions described in his petition be held insufficient for calling for such election.

General and special demurrers to the petition were overruled and defendants filed answer controverting the allegations of the petition. After evidence was heard orally it was adjudged that the temporary restraining order issued by the clerk of the court be dissolved and discharged and that the petition be dismissed at the cost of plaintiff, and he is prosecuting this appeal.

The grounds of attack on the validity of the election as set out in the petition, and which are relied on here, are, in substance: (1) That, as alleged and proved, the petitions calling for the election were not sufficient and did not contain 25 per cent. of the legal voters of the county, and that the provisions of the statute in that

respect are mandatory; (2) that a number of petitions filed with the county clerk did not contain a caption showing for what purpose the names were placed thereon; (3) that the petition requesting the county judge to place upon the ballot the question of whether or not spirituous, vinous, or malt liquors should be sold in Breckinridge county and the question placed upon the ballot was, "Are you in favor of adopting the local option law in Breckinridge County?" and because of this inconsistency between the petitions and the ballot the election was void.

Counsel for appellant argue that by their action for injunction they are pursuing the proper remedy to prevent the certification of the returns or the entry of the order putting the local option law into effect, and in support of this contention cite Gayle v. Owen County Court, 83 Ky. 61. In that case it was held that mandamus was the proper remedy to prevent the recording of the vote in a local option election, if the law was unconstitutional. Other cases cited to sustain this contention deal with the sufficiency of the nominating petitions involved in contest of elections. Of course if a local option election were held under a law that was unconstitutional, the election would be void and the holding in Gayle v. Owen County Court would apply; but this case presents an entirely different situation. It is not contended that the law under which the election was held is unconstitutional, but all of the attack is centered on the validity or sufficiency of the steps preliminary to the holding of the election.

Section 13 of the act in question makes provision for contesting a local option election, and it is the contention of counsel for appellee that the remedy afforded by that section is exclusive.

In the case of Watts v. Glover, 239 Ky. 562, 39 S. W. (2d) 1004, 1005, a certificate of election was issued to Glover, who on the face of the vote had received a majority, and Watts instituted an action in equity alleging that certain named voters shown to have cast their votes for Glover were disqualified for reasons set out in the petition and had no right to participate in the election; therefore the board had no right to certify the returns as appeared upon the face of the vote. He asked that the board be restrained from issuing a cer-

tificate of election to Glover and that it be required to
expunge from the registration books the illegal votes,
which, when done, would reduce the number of votes for
his opponent so as to make him receive a less number
of votes than were cast for plaintiff.

The court sustained both general and special de-
murrers to the petition, and Watts appealed. It was
held, in substance, that regardless of the reasons ac-
tuating the ruling of the lower court complained of, it
was correct because ''the actual relief sought by plaintiff
was a contest of election, and which could not be ob-
tained by the character of action he employed.'' The
cases of Bass v. Katterjohn, 194 Ky. 284, 239 S. W. 53
and Wolff v. Clark, 212 Ky. 435, 279 S. W. 658, were
cited as expressly so holding. Continuing, the opinion
says:

> ''The rule so announced by us in those cases is in
> harmony and in complete accord with the declara-
> tion of textwriters and courts generally, to the ef-
> fect that election contests cannot be tried by in-
> junctive process, but must be prosecuted through
> the provided remedy for the purpose, if there be
> one.''

In Cary v. Simpson, County Judge et al., 239 Ky.
381, 39 S. W. (2d) 668, 670, an election had been held
under the provisions of the statute relating to stock
running at large and a majority of votes cast were
against the running at large of stock in the territory in
which the election was held. Cary refused to comply
with the law after it became effective and purposely
permitted his stock to run at large, in violation of the
voted restriction, and a warrant was issued against him
charging him with violating the law after it had been
put in force. Before the day set for his trial, he insti-
tuted an equitable action against the county judge and
other named defendants in which he alleged that the
election was void because no valid petition as prescribed
by the statute was filed in the county court as a basis for
the order calling the election; that the question placed
on the ballot to be answered by the voters did not con-
form to the requirements of the law and was such a de-
parture therefrom as to nullify the election, and, fur-
ther, that the election officers did not properly subscribe
their names to the certificate of the result of the election.

He obtained a temporary restraining order enjoining defendant from proceeding under the warrant, and sought permanent injunction to that effect. The answer controverted the allegations of the petition, and after evidence was heard, a judgment was rendered dismissing his petition. It was held, in effect, that in a collateral attack on the election the court could not inquire into latent defects or steps prior to the calling of the election, and that there is a presumption that officials have discharged their duties as required by law. As exhaustive discussion on the questions presented for consideration and others bearing thereon will be found in that opinion, and it is conclusive of every question presented here, however, in the course of the opinion it was said:

> "A different condition would be presented if there appeared upon the face of the record and papers embodying the steps to be taken for the calling of the election a nonconformity with the statutory requirements, an illustration of which may be drawn from the facts of this case. The statute [section 4645m-1] requires not less than 25 signatures to the petition, and the petition itself must state the territory within which the election is to be held. If, therefore, there were a less number of petitioners, or if there was no territory included in the petition in which the requested election is to be held, nor any reference to the recorded name it bears, so that it could not be ascertained from the petition the territory wherein the election is to be held, then the officer whose duty it is to determine such prerequisite facts to the ordering of the election would clearly be without jurisdiction or authority to do so, for the manifest reason that there should be presented to him at least a prima facie showing before he could act in the premises."

Here it is alleged and shown by evidence that the petition calling for the election contained the names of 1,948 persons, which is more than one-fourth of the 7,483 votes shown to have been cast in the last general election. In this connection it may be said that the attack on the ground that the petitions calling for the election were invalid because many of them did not contain a caption showing for what purpose the names were placed thereon cannot be sustained. It is shown and in

fact appears from the original petition filed in the record that there were a number of units of the petition, and that each unit was properly captioned at the top of the front page, and other leaves were attached by clips or fasteners.

The evidence for appellant shows that there were 23 duplications of names of voters on the petitions; that 3 of the persons whose names appear on the petitions were minors; and 2 of the signers of the petitions had been convicted of a felony. The evidence as to some of these is of a very doubtful nature, but if they all be disregarded, it would still appear from the face of the record that the petitions bore the names of a number of legal voters in Breckinridge county in excess of 25 per cent. of the votes cast therein at the last preceding general election. Without determining whether we may consider the evidence concerning the duplication of names and disqualification of some of the voters, there was, to say the least, a prima facie showing by the petitions that would confer upon the county court jurisdiction to order the election to be held.

Insistence that there was such variation between the petitions calling for the election and the form of question as submitted on the ballot as would invalidate it is wanting in merit. The petitions substantially, if not literally, conform to the provisions of section 2 of the act relating to petitions for such election, and the form of the ballots is in strict conformity with section 6 of the act relating thereto.

Whether on proper showing appellant might have had injunctive relief against the holding of the election we need not determine, since that is not before us, but it is obvious, and in harmony with cases hereinbefore cited we are constrained to hold that upon the face of the record and papers embodying the steps to be taken for calling the election there is no showing of noncompliance with statutory requirements; but, on the contrary, there is on the face of the record such a showing as would confer jurisdiction upon the county court, and in a proceeding of this character courts cannot and will not inquire into latent defects in any of the steps preliminary to the calling of the election. An action of this character will not lie unless the election is void.

Judgment affirmed.